## In re SIGELMAN.

(District Court, E. D. Missouri, E. D.   November 10, 1920.)

No. 8876.

1. **Aliens ⬅60—Naturalization is matter of grace.**
   Foreigners are not granted citizenship as a privilege which they may demand, but as an act of grace by the government, which may fix such conditions as it sees fit.

2. **Aliens ⬅62—Character of applicant for naturalization considered, to determine benefit to state.**
   The character of the applicant for citizenship is considered, with reference to the probability of his citizenship resulting beneficially to the government.

3. **Aliens ⬅62—Naturalization denied to applicant desiring citizenship to return to native country, for abandoned family.**
   Where the purpose of an applicant for naturalization was to secure the protection of the government and obtain a passport for his return to his native country for his wife and children, whom he had left there seven years before, and with whom he had not communicated since, his abandonment of his family and the possible obligations to protect him which would be imposed upon the United States are sufficient to warrant denial of naturalization, especially where he had sought deferred classification under the draft laws because of the dependency of his family, to whom he was making no contribution, thereby evidencing an intent to evade the duties of citizenship.

Application by Abraham Sigelman for naturalization. Application denied.

M. R. Bevington, Chief Naturalization Examiner, of St. Louis, Mo., and E. W. Tobin, Asst. Naturalization Examiner.

FARIS, District Judge. [1] After due consideration of the facts in the case of Sigelman, I am of opinion that this applicant ought not to be admitted to citizenship. Foreigners who come to the United States are not granted citizenship as a privilege which they may demand, but as an act of grace for which they should humbly sue. In the exercise of this grace the government of the United States may fix such conditions as it sees fit. Among the conditions now fixed by law are the requirements that the applicant must be law-abiding and a person of good moral character.

[2] Since the status of citizenship involves reciprocal obligations as between state and citizen, it ought in fairness and in compensation for

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

such obligations to be beneficial as well to the state as to the person who by naturalization seeks citizenship. To this end, the proofs exacted from the applicant, and the status and condition of the applicant, which these proofs disclose, ought to be considered in the light of what such status and conditions promise to the government for the future, and with only negligible regard for the past. Luria v. United States, 231 U. S. 23, 34 Sup. Ct. 10, 58 L. Ed. 101. While the antecedent character of the applicant and his reputation and acts in the past are persuasive, as aiding the assumption of continuance upon a good course, yet the government is entitled, before it receives him, and before it assumes the obligation to protect him as a citizen, to consider whether the burdens entailed will not be so far greater than the benefits accruing to it as to make the naturalization of the applicant a bad or dangerous bargain, and a bargain utterly unfair to its other millions of citizens.

[3] Sigelman, the applicant herein, left his wife and family in the province of Minsk in Russia in the year 1913, wherein, for aught that appears to the contrary, they now are. He desires citizenship now mainly for the purpose, as the case discloses, of procuring a passport and returning to Russia under the protection of the flag of the United States, which would follow his citizenship, in order that he may get his family and bring them to this country. Such a situation possesses appealing phases from a sentimental viewpoint. But the wise general rule ought to be that no man who leaves his wife or infant children, or a wife and infant children, in the country from which he comes, and to which he owes allegiance, should be naturalized until he has brought his family to the United States, as, among other considerations, an earnest of his good faith that his purpose is to remain in the United States as a citizen. Moreover, the opportunity for fraud, and for the violation of the several state statutes, which denounce the abandonment of wife and infant children of tender age, is so great that any other rule would afford too wide an opportunity for a violation of these abandonment statutes by those whom the implied contract of their admission to citizenship has obligated to continue to be moral and law-abiding men.

Turning for a moment to the other phase of the case, which is that which has reference to the obligation of the United States to protect its naturalized citizens wherever they may be found, it is obviously unfair to the other hundred millions of citizens of this country that the obligation of protection should be assumed by the United States as to the applicant, when such protection might well result in serious difficulties between Russia and the United States; for he does not say that he desires to become a citizen of this country solely because he is attached to its principles, to its institutions, and to its form of government, and because he selects it as the best country and government on earth, but in effect he says that he wants citizenship to subserve a purpose of his own, without considering, it follows, whether such purpose may work good or ill to the country to which he offers himself. Thus the appealing sentimental side of the case becomes in my

view an insuperable barrier to the granting of citizenship to this applicant, in order that he may go in quest of his family; for, if clothed with such citizenship and given a passport, such a protection to him at this time, in the unhappy country of his birth, might well result in complications to this country utterly incommensurate with whatever benefit might accrue to the United States from his admission as a citizen.

This is a cold-blooded view, at variance, perhaps, with the much-vaunted land of liberty and home of the oppressed view of our obligations to all humanity. But in the light of the shortcomings, not to say failure, of the "melting pot," in recent times of stress and danger, and of the necessity of deporting divers immigrants, hastily and improvidently admitted to this country, the trend ought to be toward greater care in selecting proffered citizens, rather than toward a blind grabbing of all offerings. The situation imperatively demands this greater selective care. For these reasons among others held in mind, I am convinced that the application of the petitioner ought to be denied.

I reach this conclusion without particularly stressing the fact that this applicant secured deferred classification in the draft for army service, upon his representation that his wife and children, who have never been in the United States, were "mainly dependent on his labor for support." He made that representation in order to evade induction into the military service of the United States, notwithstanding the fact that he has been, as he now most insistently urges, unable to communicate with his family in any manner whatsoever since the year 1913, and therefore obviously unable to supply any support whatever to them since that date. The obvious inference, his asseverations notwithstanding, is that he is not sufficiently attached to the institutions and government of the United States to make him willing to fight in their defense.

Let the application of petitioner for citizenship be denied.