## In re NYBO.

### No. 5584.

Circuit Court of Appeals, Sixth Circuit.
June 27, 1930.

DENISON, Circuit Judge, dissenting.

Petitioner was born in Norway, entered the United States as an immigrant in 1923, and has since resided at Detroit, Mich. In May of 1928 he filed his petition for naturalization in the District Court for the Eastern District of Michigan. For some time prior thereto he had been engaged to marry a young woman who was a citizen and resident of Norway. After the filing of his petition she applied to an American Consul in Norway for a visa of her passport to this country, but was refused, because the quota of Norwegian immigrants was exhausted. Thereupon she decided to go to Canada to meet the petitioner and marry him. He claims he believed that upon their marriage she would be permitted to enter this country as his wife. She arrived in Canada, petitioner met her there, and they were married. After spending two weeks in Canada they applied to the American Consul at Windsor for a visa of her passport, and were advised that she could not lawfully enter this country except as a citizen of Norway and under the Norwegian quota. She could speak no English and had no relatives or friends in Canada, and he was obliged to return to his employment at once. Under these circumstances they went to a point on the St. Clair river about fifty miles north of Windsor, hired a rowboat, and under the guise of fishing crossed the river and landed on the American side. They were promptly discovered, and warrants of deportation were issued against both of them. He was also charged with the offense of smuggling an alien into the country. This charge was subsequently dismissed for the ostensible reason that the only proof of the res gestæ was his own admission and the inadmissible statements of his wife. Later the warrant of deportation against him was canceled and his wife was granted permission to depart to the country of her choice. When his application for citizenship came on to be heard it was denied, and on this appeal he seeks to have the order of denial set aside and the petition granted.

Theodore Levin, of Detroit, Mich. (Levin & Levin and Fred M. Butzel, all of Detroit, Mich., on the brief), for appellant.

Chas. B. W. Aldrich, Asst. U. S. Atty., of Detroit, Mich. (John R. Watkins, U. S. Atty., of Detroit, Mich., on the brief), for appellee.

Before DENISON and MOORMAN, Circuit Judges, and HOUGH, District Judge.

MOORMAN, Circuit Judge (after stating the facts as above).

The statute provides that before an alien shall be admitted to citizenship it shall be made to appear, "to the satisfaction of the court," that for five years immediately preceding the date of his application "he has behaved as a man of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the same." 8 USCA § 382. The aim of this statute is to admit to citizenship only those aliens who will make worthy citizens, and to effect this aim it would seem obvious that the court should consider as a part of the probationary period the time intervening between the filing of the application and its hearing. In re Bonner (D. C.) 279 F. 789. We adopt this purposeful construction, and in applying it here we find no evidence of lack of qualification, except as it is to be implied from petitioner's disregard for the law in bringing his wife into this country. It is not necessary to determine whether that act was impermissible in "a man of good moral character," as that term is used in the statute. The case turns, we think, upon whether the petitioner may be considered well disposed to the good order and happiness of the country. That qualification is quite as essential as good moral character or attachment to the principles of the Constitution.

It has been held that, if there is any doubt of the qualification of an applicant for citizenship, it must be resolved in favor of the government. United States v. Manzi, 276 U. S. 463, 48 S. Ct. 328, 72 L. Ed. 654; United States v. Schwimmer, 279 U. S. 644, 49 S. Ct. 448, 73 L. Ed. 889. The test of admissibility is different from that of the right of the government to deport. Where law violation is the ground for deportation, moral turpitude must be involved, and hence it has been ruled that not every violation of the Prohibition Law is a deportable offense. United States ex rel. Bernardo Iorio v. Day (C. C. A.) 34 F.(2d) 920. On the other hand, it has been held that such violations show a lack of attachment to the principles of the Constitution, resulting in disqualification for citizenship. In re Bonner (D. C.) 279 F. 789; Ex parte Elson (D. C.) 299 F.

352; In re Nagy (D. C.) 3 F.(2d) 77; United States v. Mirsky (D. C.) 17 F.(2d) 275. It is true that petitioner was in a difficult situation when he ascertained that his wife could not return with him to Detroit. Several courses were open to him. One was to leave her at Windsor and bring her over when he obtained his citizenship in two or three weeks. He preferred to take the chance of bringing her in in violation of law. He did not act inadvertently or impulsively, but devised a scheme which he pursued for several hours. His deliberate attempt thus to evade the law indicates, notwithstanding his exemplary conduct of the five years before, that he was not well disposed to the good order of the country. It was certainly sufficient to justify the trial judge in reaching that conclusion, and any doubt that we may have on the subject must be resolved in favor of the government.

The order of the court denying the petition is affirmed.

DENISON, Circuit Judge (dissenting).

It is clear that, when Nybo filed his petition, he was entitled to citizenship. His five-year record seems to have been unimpeachable. I agree that the probationary period should be, to some extent, treated as continuing until the hearing; but the five-year good record should be taken into account in appraising a single illegal act during that extended period. Upon this record there are only two possible reasons for denying his petition. One is that his later act shows him to be a man not of good moral character. I agree that there is no basis for that conclusion. The other is that his conduct makes it doubtful whether he is "well disposed to the good order and happiness of the" United States. A single violation of the law, even though it be by arbitrary classification called a felony, does not necessarily indicate that habitual antipathy to the good order and happiness of the community which stands over against "well disposed." A great number of police regulations are often habitually violated, carelessly or intentionally, by numbers of citizens who would nevertheless, in a fair sense, be "well disposed." Nybo's violation of the law was intentional and (briefly) deliberate; but there is no reason to doubt his statement that he had supposed his wife would be entitled to go back across the border with him, and, in a relatively impulsive way, he adopted the only method which seemed open to him to save her from what appeared to him to be an intolerable situation. This feeling, in one of his surroundings, experience, and social atmosphere, cannot be broadly condemned. The way in which his conduct was appraised by those familiar with it shows that it seemed to them fairly excusable. No criminal or deportation proceedings were brought.

The authorities cited in the opinion depend without exception upon habitual violations of the Prohibition Law. Such habitual violators declare defiance of the Constitution, and, hence, they are clearly ineligible under the clause of the statute which requires attachment to the principles of the Constitution.

This case is, in its substantial features, apparently without precedent; the circumstances which tend to minimize Nybo's breach of the law, as indicating any general criminal attitude on his part, are so unique that his admission to citizenship would not form a dangerous precedent. I think he should have been received.