### In re ZYCHOLC.

No. 46409.

District Court, E. D. Michigan, S. D.

Sept. 2, 1930.

Levin, Levin & Dill, of Detroit, Mich., for petitioner.

James L. Pangle, of Detroit, Mich., Asst. Dist. Director of Naturalization.

TUTTLE, District Judge.

The hearing in this case was had pursuant to the petition for naturalization, and a subsequent petition for an order to amend the declaration of intention, of the petitioner herein. Petitioner prays that her declaration of intention be amended by this court so as to conform to the facts, and that, when it has been so amended, petitioner be admitted to citizenship.

Petitioner was born in Warsaw, Poland, on March 21, 1901, and her maiden name was Faiga Baibus. On July 24, 1923, while still a resident of Warsaw and a citizen of Poland, she married one Alimylich Zycholc, who was also a resident and citizen of Poland. Shortly prior to this marriage, she had obtained, in her maiden name, her passport, visa, steamboat ticket, and other necessary documents preparatory for a voyage to the United States, where she had decided to take up her permanent residence. On the day following her marriage, she departed for the United States. Her husband did not come to the United States, and is still a resident and

citizen of Poland. She entered the United States on August 4, 1923. For the purpose of avoiding any explanation, delay, or inconvenience which might result from her giving a name other than the one mentioned in her passport, she entered the United States as a single woman, and gave her name as Faiga Baibus. She was admitted at Ellis Island for permanent residence in the United States, and was enrolled on the records of the Immigration Department as an unmarried woman under her maiden name of Faiga Baibus. She came directly to Detroit, Mich., and has resided here ever since.

On May 17, 1927, under the name of Faiga Baibus, she made a declaration of intention in the office of the clerk of this court in Detroit, in which declaration she made the false assertion that she was a single woman; in other words, she simply continued the same misrepresentations which she had made at the time of entering this country. These two false assertions of name and marriage status are, under the circumstances of this case, so closely related as to motive that they really constitute only one misrepresentation and one motive.

At the time of entering the United States, a disclosure of a name other than the one given in the passport would have required the explanatory statement of marriage, and a disclosure of marriage at a date subsequent to the date of the passport would have necessitated the giving of her marriage name. In the same way, having given her maiden name and stated that she was single at the time of entering the country, she was again, at the time of making the declaration, confronted with a problem in which she could not hope to profit by one false statement; it required the two false statements in order to conceal the truth as to either. It is not disputed that she made the false statements at the time of entering the United States, and it is not disputed that she made a false oath at the time of making her declaration of intention. It is admitted that this did not result from any mistake of fact. She knew what the truth was, and she knew that her statements and declaration under oath were false. There is no dispute as to the motive prompting the deception. At the time of entry she believed that a change of name might cause her delay and inconvenience. She was willing to deceive in order to accomplish what she desired and in order to avoid what was distasteful to her. The misrepresentation as to her marriage status was a necessary part of the deception as to her name. At the

time of making her declaration of intention she feared that, if such declaration of intention did not agree and correspond with her certificate of entry, delay and inconvenience in securing her citizenship might result. Again, for the purpose of securing what she desired and avoiding what was distasteful to her, she knowingly and intentionally, under oath, continued her misrepresentations.

On November 20, 1929, in the name of Fay Zychole, she filed a petition for citizenship. In this petition for citizenship she not only gave her correct name, but also truly stated the facts concerning her said marriage. The searching questions of the Naturalization Examiner at the time of the preparation of the petition for citizenship brought out the truth. The Bureau of Naturalization refused to recommend the petitioner to the court for admission to citizenship, on the grounds that the certificate of her entry and her declaration of intention were false in the two respects above mentioned; that they had been obtained through fraud upon the part of petitioner and were for that reason void, or, at least, because of such fraud could not be used as a basis for affirmative relief by the petitioner; and for the further reason that such fraud on the part of the petitioner showed her to be a person not "well disposed to the good order and happiness of the United States."

Thereupon the petitioner filed a petition, admitting the facts substantially as stated above, including the making of the false statements mentioned. In explanation of her conduct, she alleged that in making these false statements she had acted upon the advice of friends, and she prayed that an order be entered herein amending the said declaration of intention as to the two things in which it was, and is, false, and so that it might correctly state the fact of her name and marriage, and she renewed the prayer that, after said declaration of intention had been so amended, a certificate of naturalization be issued to her.

Taking up, first, the petition to amend the declaration of intention, I deny such petition to amend, on the ground that this court is without jurisdiction in this proceeding to amend this document. The declaration of intention is filed pursuant to a statute and rules and regulations promulgated thereunder by the Commissioner of Naturalization. The declaration, in triplicate, is signed and sworn to by the alien, who after the lapse of two years and not after seven years from the date thereof may use it as a basis for an application for citizenship. One of the triplicates is

filed with the clerk of the court of issuance; another is filed with the Commissioner of Naturalization; and the third is delivered to the declarant. The declaration may, during this limited period, be used in any court in the United States having jurisdiction of naturalization. This court in this proceeding has no more authority to amend the declaration in question than any other District Court of the United States would have if these proceedings were there pending. To state the same thing in another way, this court has no more authority to amend the declaration in this case than it would have if the petition were based upon a declaration made in some other federal or state jurisdiction. Let us assume that the declaration of intention used in this case had been made in the state court or in some other federal jurisdiction. There is no theory of jurisdiction which would permit this court in a proceeding for naturalization to amend a document on file in some other jurisdiction simply because that document happened to be the basis of the proceeding before this court. This is a petition for citizenship, and it cannot serve the added and double purpose of a bill to amend a public document. In passing, it might be stated that, even though the petitioner could in this proceeding be given the benefits of a bill to reform a document, the relief would be denied on the old doctrine of unclean hands. A court would not permit a declarant to knowingly and intentionally sign and swear to a false document, file it as a public document and record, and then, when the truth serves the purpose of that declarant better than the falsehood, permit the declaration by order of the court to be changed. There are other reasons why the petition to amend must be denied, but these are sufficient.

■ This leaves us with a petition for citizenship based on a certificate of entry which is untrue as to two material things, name and marriage, and a declaration of intention false as to the same two material facts. These two documents represented necessary steps in the road to citizenship. Both are false in two material respects. Immigration and naturalization are closely related to each other. The statutes and regulations thereunder recognize that both the Immigration Department and the Naturalization Bureau consider it material for this country to be advised as to the name and marital relations of aliens seeking privileges from this country through these departments. The rules and regulations of the Immigration Department very clearly and properly require aliens to state their names, so that we can find out who they are and

what they are, and require them to tell whether or not they are married, so that we may know who, if any one, is tied to them by a matrimonial towline. The representatives of our Immigration Department have the right and duty to ask these questions. It is the duty of the alien seeking our shores to give correct answers. This petitioner entered our open door with a falsehood on her tongue. She deceived our officials, and, as a result, she received a certificate which was, and is, false. It is no answer to say that she would have been admitted even though she had told the truth. It would not be a defense for the pickpocket to prove that the victim happened to be a generous man and would in fact have given him the money voluntarily upon a true statement of his great needs.

More than three years later, when she wished to apply for citizenship, she continued the fraud and committed perjury in making her declaration of intention. Her petition for citizenship is in conflict with the two documents upon which it is based. The petition is true. The certificate of entry and the declaration of intention are false and were secured through fraud. A house is no stronger than the foundation upon which it rests. The petition must fail because the documents upon which it rests are tainted with falsehood and fraud.

■ Aside from the foregoing considerations, and even assuming that this court had, and would be warranted in exercising, the power to order the amendment sought, the facts and circumstances already mentioned clearly indicate, in my opinion, that the petitioner was not, during all of the statutory five-year period immediately preceding the date of her petition for citizenship, "well disposed to the good order and happiness of the United States," as required by section 4 of the Act of June 29, 1906, as amended by the Act of March 2, 1929, § 6, subd. b (section 382, tit. 8, U. S. Code [8 USCA § 382]). Petition of Nybo (D. C.) 34 F.(2d) 161, 163. As this court said in the case just cited, in denying, on this ground, citizenship to an alien under circumstances somewhat similar to those here involved (the order in which case was affirmed by the Circuit Court of Appeals in an opinion filed June 27, 1930, 42 F.(2d) 727):

"The court is called upon to use a different set of scales in weighing conduct on a petition for naturalization from those used in weighing conduct in a criminal case. Conduct may not be sufficiently bad to justify criminal prosecution and still fall far short

of being good enough to reward with citizenship. We are not here dealing with the question of enforcing the criminal law, but with the question of whether or not this petitioner has earned, by his conduct, the high reward of citizenship in the United States of America."

Both the petition to amend the declaration of intention and the petition for admission to citizenship are denied.