**UNITED STATES v. ZALTZMAN.**

No. 1833.

District Court, W. D. New York.

April 27, 1937.

George L. Grobe, U. S. Atty., and John S. Carriero, Asst. U. S. Atty., both of Buffalo, N. Y., for the United States.

William Eber, of Rochester, N. Y. (Charles B. Bechtold, of Rochester, N. Y., of counsel), for respondent.

KNIGHT, District Judge.

Isaac Zaltzman, a native and former citizen of Poland, was admitted to citizenship in the United States on June 29, 1926. The petition upon the application for citizenship recites that the petitioner was married and that his wife's name was Dora Zaltzman. Petitioner included the requisite affidavits of witnesses as to the good moral character and qualifications of the petitioner. Admittedly Zaltzman was married in Poland to one Milka Shmisa prior to 1909, in which year Zaltzman came to the United States. The aforesaid wife has never resided in the United States. Zaltzman claims that prior to the application for citizenship he obtained a Jewish or Rabbinical divorce in this country and married one Dora Kissen. This action is brought by the government to have declared null and void the certificate of naturalization issued to Zaltzman upon the ground that it was procured illegally and fraudulently. Section 15 of the Act of June 29, 1906 (title 8, U.S.C. § 405 [8 U.S.C.A. § 405]).

The petitioner for naturalization is required by statute to state the name of his wife, if married, title 8, U.S.C. § 379, U.S.C. (8 U.S.C.A. § 379). Petitioner was further required to satisfy the court that during five years immediately preceding the application he had behaved as a man of good moral character and to support this proof by the testimony of at least two witnesses. Section 382, title 8, U.S.C. (8 U.S.C.A. § 382). The so-called "get" was not a legal divorce. The record discloses that in or about October, 1920, respondent, then residing in Ohio, applied in Akron, in that

state, to a Rabbi of the Jewish Orthodox Synagogue for a Jewish divorce from his wife then living in Russia. The procedure described in obtaining this divorce as appears from the record is: "One party first comes to a Rabbi. Then the Rabbi ascertains through another Rabbi, if the other party lives in a different town or country, that the other party is willing that the divorce should be granted. When this information is obtained through the other Rabbi, then the original Rabbi, to whom the application for divorce was made, prepares the papers for the Jewish divorce." This procedure, it is claimed, was followed. In its totality it amounts only to a consent between the parties to a divorce. It was a nullity so far as concerns the divorce laws of Ohio or New York states. Miller v. Miller, 70 Misc. 368, 374, 128 N.Y.S. 787; Chertok v. Chertok, 208 App.Div. 161, 203 N.Y.S. 163; In re Spiegel (D.C.) 24.F.(2d) 605; Petition of Horowitz (D.C.) 48. F. (2d) 652, 653; Falkoff v. Sugarman, 26 Ohio N. P. (N.S.) 81.

The contention of the respondent is that he had been informed that he was divorced and had the legal right to remarry and did so in good faith. There is a very considerable conflict in the testimony of the respondent going to show that the respondent did not act in good faith. No documentary evidence of any proceedings upon the application for issuance of a Jewish divorce was produced in evidence. Respondent testified that he never had a copy of this. The Rabbi did not produce it. Respondent at one time stated that his wife got a divorce from him and he had received a communication from his first wife's sister to that effect. Respondent testified that he married Dora Kissen in 1922 in Cleveland. The record discloses that on April 12, 1920, respondent applied for a marriage license to marry Dora Kissen. This was prior to the application for any divorce. There was introduced in evidence an instrument claimed to be a marriage certificate. There is nothing in this to identify either the respondent or his so-called present wife. It is not signed by the contracting parties. Neither of the surnames of the contracting parties appears in the certificate. The connection, if any, is found only in the given name "Isaac." He is referred to as the son of Jacob Nechemj. There is nothing to show that he was such son. The bride is designated as "the widow Stirl, daughter of Lipa." The application for the marriage license signed by Dora Kissen states she is the daughter of Anna Levine and of Louis Podlich. Assuming this so-called marriage certificate purports to refer to respondent and Dora Kissen, it bears date January 9, 1921. This was four months prior to the time when the so-called Jewish divorce was issued. Further, the respondent in one statement made to the Examiner said that he never used the marriage license and that "getting the license was the same as being married." There are numerous other substantial contradictions in the testimony which go to show the lack of good faith on the part of respondent, and that he acted fraudulently in obtaining his citizenship papers.

Naturalization is a privilege granted by statute (8 U.S.C.A. § 351 et seq.). No obligation ever existed requiring the government to grant it. The provisions of the statute must be strictly observed and the duty rests upon the applicant to see that this is done. United States v. Ginsberg, 243 U.S. 472, 37 S.Ct. 422, 61 L.Ed. 853. Any reasonable doubt must be resolved in favor of the United States. United States v. Manzi, 276 U.S. 463, 48 S.Ct. 328, 72 L.Ed. 654. While the complaint charges fraud, proof is sufficient to sustain an intent to defraud even assuming proof of such intent were necessary.

Since respondent was never legally divorced from his first wife, and he has lived continuously to this time in adulterous relations with the woman named as his wife in the naturalization petition, he was ineligible to admission to citizenship. Respondent was not a man of good moral character. United States v. De Francis, 60 App. D.C. 207, 50 F.(2d) 497; Estrin v. United States (C.C.A.) 80 F.(2d) 105; United States v. Unger (D.C.) 26 F.(2d) 114; Petition of Horowitz (D.C.) 48 F.(2d) 652.

It is therefore found that the citizenship papers of the respondent were illegally procured and that the same should be canceled. Specific findings may be submitted and judgment entered as prayed in the complaint.