**UNITED STATES v. ZGREBEC.**

No. 8590.

District Court, E. D. Michigan, S. D.
March 21, 1941.

Louis M. Hopping, Asst. U. S. Dist. Atty., of Detroit, Mich., for plaintiff.

Land & Land, of Cleveland, Ohio, and John Stipeck, of Detroit, Mich., for defendant.

PICARD, District Judge.

This is an action brought by plaintiff against defendant, Blaz Zgrebec, to cancel his certificate of citizenship on the theory that it was fraudulently and illegally procured. The action is brought under Section 15 of the Naturalization Act of June 29th, 1906, 8 U.S.C.A. § 405. Defendant was admitted to citizenship in common pleas court, Trumbull County, Warren, Ohio, September 15th, 1922. Most of the facts are not in dispute, except defendant denies fraud on his part, alleging that the several cited instances were merely mistakes resulting chiefly from his inability to understand and speak the English language. Through counsel it was claimed that whenever defendant testified before an examiner he would use the present tense instead of the

past, and that statements thus made years ago have arisen to plague him in his present troubles.

The court makes the following findings of fact:

Defendant was born in Yugoslavia in 1886 and on November 20th, 1911, married Josephine Galinac. He came to this country alone on June 6th, 1913, living in Milwaukee, Wisconsin, then in Ironwood, Michigan, and then in Sault Ste. Marie, Ontario. Here he lived about 22 months, re-entered at the Michigan "Soo", but paid no head tax. He spent some time in Milwaukee, Wisconsin; Gary, Indiana; Uniontown, Pennsylvania; Youngstown, Ohio; and Detroit, Michigan, then back to Youngstown at the end of 1915 or the beginning of 1916, where he remained until 1921.

In 1918 he learned that his wife was living with another man, by whom, he was advised later in 1920, she had had a child.

On January 19th, 1920, he filed his declaration of intention but before filing that declaration with his petition for citizenship in 1922, he admits he erased the name of his wife "Josephine" and filled in the rest of the blank to denote that he was a "single" person. He made the change he said for two reasons—first, he thought his wife had obtained a divorce, and second, he supposed that the question had reference to his present status, not what it might have been when he filed his declaration. In any event, the duplicate declaration as filed with the petition, contained a statement that was untrue. Neither he nor his wife in Yugoslavia had secured a divorce.

Dates are important in this matter and for that reason we refer to the essential ones in detail.

In March, 1922, he married his present wife, Katherine Kozkar, who was also married and not divorced from her husband. The following May is when he made his petition for citizenship and then occurred the erasure of his wife's name on the accompanying declaration of intention. Therefore at that time he had two "wives" and under these circumstances, unknown to the government, he was admitted to citizenship in September of that same year. In 1924 his present wife secured her divorce in Trumbull County, Ohio, but made no mention in her bill that she had been married to defendant in 1922. Incidentally, also, she used her first husband's name and nothing in the bill indicated that she had

been living with defendant, under his name, for two years. In defendant's brief it is contended that the second wife gave all this information to the court in chambers but this does not appear as a matter of record and if the divorce proceedings are read without this explanation, at least a technical fraud was practiced upon the state court. With this, however, we are not concerned except as it may throw light upon what happened before and after in the series of events scrutinized by this court in arriving at a conclusion on the credibility of defendant, or at least the reasonableness of his story.

In 1930 defendant, having failed by correspondence to get the children of his wife, by another man, not to bear his name, went to Yugoslavia and started divorce proceedings there, but he stated that this action would have taken too long and so he returned to the United States. In 1932 Janko Yakovac confessed to the naturalization officers at Warren, Ohio, that when he appeared as witness for defendant in May, 1922, in support of defendant's petition for citizenship, he, Janko Yakovac, had committed perjury, giving as his reason that he then thought defendant had the possibilities of a good citizen but recently had become convinced that Zgrebec was a communist, a bigamist, and a person not of good moral character. Two years later, in February, 1934, defendant filed his bill for divorce from his first wife, but said nothing in that bill about cohabitation with his present wife, then of 12 years' duration, and finally obtained his divorce the same year.

In the meantime, defendant has had one or two brushes with the law both on suspicion of illegally making wine, but he has never been convicted. He was also charged with being a communist, but the warrant issued was never served being returned with the notation that he could not be found. There is no evidence that defendant had been hiding. Defendant in securing his citizenship papers made representation that he had lived in the United States continuously since 1913 and this was admittedly a deliberate false statement or error, since he had lived in Canada for almost two years after entering the United States in 1913, to-wit, beginning with the end of 1913 to 1915. He claimed that either he misunderstood the interrogators or they misunderstood him. One of his witnesses also said at the naturalization hearing that he had known defendant more than five years

previous to the filing of his petition and had seen petitioner continuously for the five years previous and up to the day of the filing of defendant's petition. As a matter of fact this was an untruth.

This court cannot believe that all the above happenings that now appear on the record of defendant as evidences of his fraud, were the result of "mistake." Such a contention taxes our credulity. Although ill-fortune may follow one person with startling and amazing continuity, this court cannot believe that everybody connected with this man's journey, prior and subsequent to his becoming a citizen, the Federal government's naturalization department, examiners and others, and even his own attorneys, always misunderstood defendant simply because he very often used the wrong tense in speaking. This might have happened once or it might have happened three or four times but we believe the trained men of the United States naturalization department are accustomed to making allowance for those not well versed in the English language, while his lawyers, handling his own and his wife's divorce cases, would certainly have realized the importance of the rather unusual situation in each case. If they had been told the facts they certainly would have included the whole picture in the respective bills of complaint. To believe that his ill luck in being continuously misunderstood insisted upon dogging his footsteps but—and this is important—always arm in arm with his good fortune to the extent that a material fact was concealed at the proper and most opportune time for defendant, is possible but not probable. We are bound to find therefore that defendant obtained his citizenship papers by fraud, not in one instance alone, but in a series of happenings and that he was not a man of good moral character at the time he received his certificate of citizenship.

### Conclusions of Law.

American citizenship in this day and age has reached the height and the fullness of its meaning and those who are lucky enough to possess it know they have something priceless. Unfortunately, however, there are those who have obtained that treasure, who seemingly do not appreciate its true value and many of those may have been admitted to citizenship when scrutiny of the facts was not as searching as it is today. It can easily be understood that great laxity in this regard would certainly result in a breeding ground for a group that has become known as "fifth columnists" since their respect for American citizenship is always in direct ratio to the ease or difficulty of obtaining the same. Accordingly if we pass over lightly any false or fundamental representation made to secure that citizenship we can expect an utter contempt on the part of those who receive it. We are not suggesting that this statement fits defendant and are not passing upon any communistic leanings that he may or may not have. Those charges have not been proven to this court. But on the other hand we believe that this defendant has shown an entire lack of appreciation of what the granting of citizenship means and to realize that to obtain it one must approach the portal with a frankness that cannot be subject to doubt. Defendant and some of his helpers have seemingly been interested in what they could—to use a slang expression—"get away with". But naturalization is a privilege granted by the statutes. 8 U.S.C.A. § 351 et seq. It is not a right. There is no obligation upon this government to grant it and because of that the provisions of the statute must be strictly observed. The duty rests not upon the United States, but upon the applicant to see that he makes no false statements. In United States v. Ginsberg, 243 U.S. 472, 37 S.Ct. 422, 61 L.Ed. 853; United States v. Zaltzman, D.C., 19 F.Supp. 305; and in United States v. Manzi, 276 U.S. 463, 48 S. Ct. 328, 72 L.Ed. 654, it was held that any reasonable doubt in granting citizenship must be resolved in favor of the United States. The burden is on the plaintiff in this proceeding. The court feels that the government has sustained that burden. Here not only defendant, but his present wife, lived together for two years, when each had another spouse and throughout the entire history of the matter as revealed to this court there has apparently not been that open directness required by our courts even in the two divorce proceedings involving this defendant and his present wife. Evidently defendant has been under the impression for years that in the event his perfidy became known he could always fall back upon his lack of education or his inability to understand English.

Under Section 7 of the Act of June 29th, 1906, as amended and supplemented, 34 Statute 596, no person who is a bigamist may become a naturalized citizen and this

defendant lived in adulterous relation with the woman named as his wife. He was therefore ineligible to receive citizenship. He was not a man of good moral character as interpreted by our courts. United States v. DeFrancis, 60 App.D.C. 207, 50 F.2d 497; Estrin v. United States, 2 Cir., 80 F.2d 105; United States v. Unger, D.C., 26 F.2d 114; Petition of Horowitz, D.C., 48 F.2d 652.

■ Defendant claims that when he told the examiner he had "no wife" he thought she had secured a divorce in the old country. Of course this can be the only statement defendant could make under the circumstances. But it is well to note that when he filed his application for citizenship in 1922 it was after he had been married to the second wife and that he then takes the precaution to erase his first wife's name. Doubtless there was some strong suspicion in his own mind that if the first wife's name was left on the declaration of intention it might start inquiries by the Federal authorities as to just what had happened to his first wife. It might also reveal that he had been recently married to Katherine Kozkar. And no one knew better than defendant that he was then living with this woman as her husband. As was said in the case of The Kalfarli, 2 Cir., 277 F. 391, at page 400: "If a party conceals a fact that is material to a transaction, knowing that the other party is acting on the assumption that no such fact exists, the concealment may be as much a fraud as if the existence of the fact were expressly denied, or the reverse of it expressly stated." See also United States v. DeFrancis, 60 App.D.C. 207, 50 F. 2d 497.

Defendant urges that this case is controlled by United States v. Orend, D.C., 221 F. 777, where the alien had made a "mistake". If this court felt that there had been a mistake its attitude towards defendant might be more sympathetic. To us it was fraud, pure and simple. See United States v. Vujnovic, D.C., 12 F.Supp. 208.

■ Defendant's counsel also argues that defendant has been a good citizen for a number of years and that he has been industrious. This may be true, but of course cannot affect the record here or his rights under the law any more than the legal effect of his having been accused of communism and of violating the prohibition act. These mere charges should not have been used against him. But when it is argued that he has been a good citizen, one's thoughts naturally revert to the other ad-mitted or proven facts of a contradictory tenor. Nevertheless, this court has been governed solely by what took place before and when he became a citizen; the situation as it then existed. What happened subsequent may, however, throw some light for our guidance.

■ Some point is also made of the fact that the person reporting the matter to the government was prompted by malice. Granting this, still that malice cannot change the record, and it is a known fact that much of the information coming to the government about violations of its laws come to it because former joint wrongdoers have fallen out.

■ In view of the facts in this case and since the burden of proof does not require the government to establish its case beyond a reasonable doubt, but simply by a preponderance of the evidence (United States v. Rovin, D.C., 12 F.2d 942) we grant petition of plaintiff to cancel defendant's citizenship certificate.

An order in conformity with this opinion will be prepared for signature by this court.