## Petition of BORIC.
### No. 18601.

District Court, D. Oregon.

May 8, 1945.

No appearances.

JAMES ALGER FEE, District Judge.
■ ■ This was a petition for naturalization by Milka Boric. It came on in open court for hearing in accordance with previous directions issued after the an-nouncement of the opinions of the Supreme Court of the United States in Schneiderman v. United States, 320 U.S. 118, 63 S.Ct. 1333, 87 L.Ed. 1796, and Baumgartner v. United States, 322 U.S. 665, 64 S.Ct. 1240, 88 L.Ed. 1525, holding that an extremely high degree of proof is necessary to cancel citizenship once attained where there is no proof of fraud or perjury. The order that a certificate issue is a judgment. Under the present statute the administrative officers are no longer designated by the trial judge, nor are they responsible to him. Admission to citizenship should then no longer be granted, whatever the burden on the trial court, without a record made in a judicial proceeding in open court and a judicial finding that the applicant is in fact possessed of the qualifications required as prerequisites to admission by the statute.[1] Therefore, acting under the present statute[2] it was directed that examinations of all applicants for citizenship take place in court. A perjured answer in such a record at least may lay the ground for cancellation proceedings based on fraud at some subsequent time.

■ The present petitioner is recommended for citizenship by the statutory examiner.[3] Inasmuch as the same person while designated as an examiner by this court had previously recommended denial of citizenship some years ago because the same applicant had committed perjury, the reason for the change of recommendation required explanation. The examiner informed the court that he was directed to make a favorable recommendation by his superiors of the Central Office.[4] Furthermore, the examiner who was then acting under order of the administrative officials, called the fact of previous convictions to the attention of the court. It happened that the judge who presided at the previous hearing on the application for citizenship and who sentenced the applicant for the crime of perjury, was presiding at this proceeding also. Upon recognition of the ap-

---

[1] In United States v. Scheurer, D.C., 55 F.Supp. 243, 251, it was said that if the court were held to the responsibility of discovering in the initial proceeding whether the applicant possessed the requisite qualifications that the "judge must abandon the examiner system and hear each applicant so that the court will have a basis upon which to make findings."

[2] 8 U.S.C.A. § 701.

[3] Act of October 14, 1940, c. 876, Title I, Subchap. III § 333, 54 Stat. 1156, 8 U.S.C.A. § 733.

[4] This practice seems contrary to the statute, October 14, 1940, c. 876, Title I, Subchap. III, § 333, 54 Stat. 1156, 8 U.S.C.A. § 733, which provides that the Commissioner may designate the examiner but the examiner shall conduct preliminary hearings and "make findings and recommendations thereon to such court."

plicant by the judge, the examiner asks questions about her previous record. From this, and from judicial knowledge of the former proceedings, the court may indicate certain facts.

Milka Boric had been convicted many times before courts of various offenses against the liquor laws. At the hearings conducted by the designated examiner on her first petition, however, she denied ever having been convicted. The only shadow of an excuse was that an attorney told her that she should deny the convictions because the Eighteenth Amendment had been repealed and that they did not count. She obviously understood the situation or she would not have taken legal advice before the examination. She was indicted, pleaded guilty and was sentenced to a penitentiary term before this very court and judge.

If the course understood to be followed in many of the District Courts had been followed here, no intimation of the existence of such facts would have been obtained. The examiner would have said in open court that the applicants (consisting of a hundred or more and including Milka Boric) have been examined and found satisfactory, and are recommended for citizenship. Milka Boric would have held up her hand, concealed among the group, and received citizenship. The grant to her by the court would have been a judgment.

■ The only justification imaginable for concealment of such facts from the court in what must be a judicial proceeding by presenting an applicant with a recommendation for admission is the proposition that there is a question of law involved which the Central Office has determined in favor of the applicant. It is said that although no pardon has been granted, proof of good moral character within a five year period has been adduced since the conviction of applicant for perjury was over five years ago. There are three noticeable points to this argument. A presumption of good moral character is entertained in spite of known facts which might well destroy such a procedural de-

vice. This formalistic approach deprives the court wherein the judicial power is vested, of the authority to decide as a question of fact whether within five years applicant has had a good moral character, and whether the applicant has behaved as one who is attached to the principles of the Constitution of the United States.[5] Finally, the question of law was determined upon which the examiner was able to produce no authority.

In this court an actual judicial process has been restored upon all applications for citizenship by directing that each be tried in open court. As has heretofore been noted, however, even where such a hearing is held, the judge is presently forced into the position of a prosecutor.[6] The naturalization examiner has already made a favorable recommendation as to this applicant.

■■ The doctrine of the Schneiderman and Baumgartner cases is strictly applicable in cancellation proceedings and not to proceedings for admission to citizenship. It has a procedural basis essentially. These cases do not hold that if the facts upon which cancellation was sought in either case had occurred before the "final hearing" in the primary proceeding for naturalization and there been presented, the trial court would be required to admit either Baumgartner or Schneiderman. Only by distortion can the opinions above mentioned be construed as laying down rules of substantive law for the trial courts to follow in cases of application for admission. But according to the precedents which are now being forged, the record must affirmatively show evidence that the applicant is not entitled to citizenship. In the case of Petition of Kohl, 2 Cir., 146 F.2d 347, 349, the appellate court reversed the finding of fact made by the trial court on a contested hearing that the applicant had not "behaved as a person * * * attached to the principles of the Constitution of the United States * * *." The appellate court did not give effect to the rule that the applicant must establish such facts. Nor was weight given to the effect that the evidence was conflicting and that there was evidence

---

[5] The court is entitled to examine applicant's record generally, and is not restricted to the five year period. In re Ross, C.C., 188 F. 685; In re Sigelman, D.C., 268 F. 217; In re Caroni, D.C., 13 F.2d 954; In re McNeil, D. C., 14 F.Supp. 394, an opinion by Judge

St. Sure; In re Gabin, D.C., 60 F. Supp. 750, an opinion by Judge Goodman.

[6] This lack of machinery and knowledge which hampers the judge in this role, besides the unjudicial character thereof, is pointed out in United States v. Scheurer, D.C., 55 F.Supp. 243, 250, 251.

136

which would have amply sustained the finding of the trial court. Furthermore, the trial court was not directed to hold another hearing but was "directed to grant the petition." Although this authority seems to be contrary to the heretofore unquestioned rule that the acquisition of citizenship, although not of grace by the court, is not of right as to the alien,[7] and the rule that the burden is upon the applicant to show the prerequisite qualifications,[8] and the direction of the statute that an applicant shall not be admitted unless in possession of these prerequisites,[9] it seems necessary that a complete record be made in this proceeding by the introduction in evidence of the documents showing the previous denial of citizenship and its grounds, and the conviction.[10] This will be done although the decision above cited is not controlling here, and with due respect to that court, seems to run counter to both the statute and the binding decisions.

■■ When the evidence has been introduced in this case, it will necessarily be weighed under the established rule that citizenship should be denied unless the record shows that the petitioner is clearly entitled to admission.[11] The court has the responsibility of protecting the body of citizens against improper admissions by resolving doubts in favor of the government.[12] This record now contains a statement of a conviction and likewise a statement by the applicant that she has applied for a pardon but that the same has not been granted. In this state of affairs, even a grant of citizenship would not permit the applicant to exercise civil rights. An admission to citizenship would, therefore, simply confer social security upon an ex-convict.[13]

The court directs that this cause be set again for hearing and the examiner bring into court, prepared for introduction into evidence, the records above designated, and whatever other evidence may be available. Any evidence presented on behalf of the petitioner will likewise be heard.

Set for further hearing.

---

[7] The Tutun case, 270 U.S. 568, 578, 46 S.Ct. 425, 427, 70 L.Ed. 738, often quoted as if it gave virtue to a formalistic test, says: "It is true that the Constitution does not confer upon aliens the right to naturalization."

[8] The Tutun case, supra, sets out the requirement as follows: "The applicant for citizenship * * * must allege in his petition the fulfillment of all conditions upon the existence of which the alleged right is made dependent, and he must establish these allegations by competent evidence to the satisfaction of the court."

[9] Act of March 2, 1929, c. 536, § 6 (b), 45 Stat. 1513.

[10] The court shall not postpone indefinitely. Schwab v. Coleman, 4 Cir., 145 F.2d 672.

[11] United States v. Ginsberg, 243 U.S. 472, 37 S.Ct. 422, 61 L.Ed. 853; United States v. Maney, 278 U.S. 17, 49 S.Ct. 15, 73 L.Ed. 156; United States v. Zaltzman, D.C., 19 F.Supp. 305; United States v. Kazarian, D.C., 34 F.Supp. 260.

[12] United States v. Manzi, 276 U.S. 463, 48 S.Ct. 328, 72 L.Ed. 654; United States v. Zaltzman, D.C., 19 F.Supp. 305; In re Nybo, 6 Cir., 42 F.2d 727; In re Scriver, D.C., 9 F.Supp. 478; Petition of Wright, D.C., 42 F.Supp. 306.

[13] The case of United States v. Ascher, 2 Cir., 147 F.2d 544 seems to differentiate between a failure to advise an examiner of a conviction of a felony and a failure to disclose other facts.