## Singer v. Metropolitan Insurance Company

Before Patterson, P. J., Weiss and Kennedy, JJ.

*M. D. Wedner, John A. Metz, Jr.,* and *Metz & Metz,* for plaintiff.

*Dale C. Jennings,* for defendant.

KENNEDY, J., May 24, 1951.—The above-captioned case is an action of assumpsit on a policy of life insurance in the sum of $5,000, issued by defendant to plaintiff, Isaac Singer, on March 27, 1926, and having attached a supplemental agreement providing for payments if the insured should, before age 60, "become

totally and permanently disabled as the result of bodily injury or disease . . . so as to be prevented thereby from engaging in any occupation and performing any work for compensation or profit"; said payments to be at the rate of $10 per month for each $1,000 of life insurance carried, and to continue until the total disability had ceased. The agreements further provided that if total disability was proven, all premiums on the policy would be suspended during the period of disability.

In the application for the policy plaintiff stated his date of birth as November 10, 1888. He claimed that he became totally and permanently disabled on April 15, 1947, and that at that time he was under 60 years of age.

The defense, in addition to denying total and permanent disability, although admitting receipt of proofs of such a claim, also set up the defense that plaintiff was born on November 10, 1884, and that therefore he was beyond age 60 at the time of any alleged total and permanent disability.

An amendment to the complaint was allowed at bar during trial, agreeable to the Supreme Court Procedural Rules, averring that the disability as aforesaid was continuous up to the time of trial. The amendment further claimed a refund of the premiums that plaintiff had been paying on the life and sick and accident policy after suit was brought and for the years 1948, 1949 and 1950, in the total sum of $402.90. This latter claim in the amendment was allowed over the objection of counsel for defendant.

The jury returned a verdict in the sum of $2,652.90, made up of claimed total and permanent disability for a period of 45 months, $2,250, and the claim for the premiums paid after institution of this action in the sum of $402.90. Counsel for defendant has now moved

for judgment n. o. v. or in lieu thereof for a new trial, and it is the disposition of these motions that is now before us.

At trial plaintiff testified that he was born in Poland on November 10, 1888. He further testified that in 1903 he ran away from his home and went to London, England, and for a short time stayed with some relatives. Meanwhile, according to his testimony, he received from his older brother Simon, who had years before migrated to the United States, a steamship ticket and other necessary papers so that he, plaintiff, could come to the United States. Among those papers it was stated that plaintiff was born on November 10, 1884. Plaintiff admitted in cross-examination, and later defendant proved by the original records from the United States District Court for the Western District of Pennsylvania, that on September 16, 1908, plaintiff made out his declaration of intention to try to become a citizen of the United States, and in the declaration swore that he was born in Poland on November 10, 1884.

The naturalization records of plaintiff further show, and he also admits same, that on February 14, 1914, when he made application for naturalization, he again under oath stated that he was born on November 10, 1884. Plaintiff further admitted that in his marriage license application in 1907 or 1908, he also stated that his birth date was November 10, 1884.

Plaintiff further testified that he gave his birth date when he applied for the policy now in suit in March 1926, as November 10, 1888, because before that time he had been informed that he was under the wrong impression and that actually he was born on the date which he gave in the application. His testimony as to how he ascertained his alleged true birth date was that sometime between 1924 and 1926 his elderly father had migrated here to the United States and that in some

religious festivity in plaintiff's home, the father had said in effect that he, plaintiff, was making himself too old and that he was born in 1888 and not in 1884.

There was testimony from plaintiff's elder sister, Jennie Singer, who had migrated to the United States after plaintiff, that she recalled when plaintiff was born and that it was on November 10, 1888, and that at that time she was herself 12 years of age. The witness also identified certain writing in Hebrew along the margin of a part of the Jewish Bible, namely, the Book of Genesis, as that of her father, although she admitted that she cannot write either the Hebrew or Yiddish languages. There was introduced into evidence, under the rules as to pedigree, this Hebrew Bible.

Plaintiff testified that sometime in 1933 his father was visiting their home and that he had brought this book with him, also that there was some writing on the margin of the book, and then the book remained in plaintiff's home, but had not been seen until it was found in 1944.

A member of this bar and an admitted expert on Hebrew language and of the Hebrew calendar used in the ritual of the Orthodox Jews in their religious practices in the synagogue, Bernard Kaplan, translated the Hebrew characters written on the margin of the book to the effect that it stated plaintiff was the son of the writer and that he was born on the Holy Sabbath, the sixth of Kislev, in the Jewish year 5649. He further stated that by applying this Jewish calendar and the day, month and year as aforesaid to the Gregorian calendar, it would be November 10, 1888. He further testified that the writing was on the margin of the page where in the synagogue, on November 3, 1888, under the Gregorian calendar, the story of Abraham and Isaac would be read to the congregation and explained. This plaintiff's father's name was Abraham.

Defendant argues in support of the motion for judgment n. o. v. that naturalization proceedings constitute a judgment of a court of competent jurisdiction and that same cannot be attacked by the party naturalized in any of its particulars, that therefore he is estopped from claiming any different age, and that the age set forth in the application for certificate of naturalization is conclusive. In support of this position the cases of Spratt v. Spratt, 4 Peters 393; In re Bodek, 63 Fed. 813; McCarthy v. Marsh et al., 5 N. Y. 263; In re Zychole, 43 F. (2d) 438, and United States v. Gleason, 78 Fed. 396, 33 C. C. A. 272, are cited.

We have read these decisions, and none of them is factually analogous to this current proceeding. It is true that the formal naturalization of an applicant for citizenship—and in this case plaintiff was admitted to citizenship on May 21, 1914, before Orr, District Judge—is a judgment and that such a judgment is binding upon all State courts. However, we do not agree that all of the data required by the Naturalization Act of June 29, 1906, c. 3592, sec. 4-34, 34 Stat. at L. 595, becomes such a part of the judgment that same becomes res adjudicata against applicant and he is forever foreclosed in any type of a proceeding in the future from claiming that an honest mistake was made at the time in giving some of the information required by the statute.

The recent case of Harrison v. Metropolitan Life Ins. Co., 168 Pa. Superior Ct. 474, is a case closely in point, although it must be conceded that a checking of the paper books discloses that the alleged conclusiveness of birth date in an application for citizenship was not raised in the court below. In this case the insured's widow, who was the beneficiary in the policy, brought suit, and the defense was that the insured had misstated his age with the result that under the policy provisions, the amount of the insurance should be re-

duced to the amount which the premiums would have paid for at the correct age. The amount admitted by the insurance company was paid into the court.

The insured stated in his application for the policy that his birth date was December 4, 1886. At trial defendant proved from the United States court records that in the insured's naturalization application, etc., he stated his birth date as October 3, 1883. Plaintiff was permitted to produce evidence of various declarations concerning pedigree to corroborate the insured's statement in the application for the policy. The jury in a special finding found the birth date of the insured to be October 3, 1883. Plaintiff then appealed.

In the opinion of the court written by Rhodes, P. J., at page 478, the following is stated:

"The Jury could have found that the date of the insured's birth on the evidence submitted by the appellant was one of several dates other than October 3, 1883, which defendant sought to establish as the date of his birth."

See also Hervitz v. New York Life Insurance Co., 160 Pa. Superior Ct. 496 (1947).

This court recently decided in the case of Schutzman v. Metropolitan Life Insurance Co., July term, 1948, no. 256 (opinion not reported; see 99 Pitts. L. J. 440), that the date given by plaintiff in his application for citizenship was not conclusive upon him, and that he was not estopped from explaining or changing that date if he claimed that an honest mistake was made. In this case plaintiff brought a bill in equity against defendant insurance company to enforce certain alleged rights in certain insurance policies. These rights were dependent upon his age. Plaintiff testified as to his own age, and defendant argued that plaintiff was precluded from asserting any other date than the one contained in the naturalization paper. Judge Montgomery held that plaintiff could not succeed in his bill for the rea-

son that his uncorroborated testimony as to his correct age was not sufficient to meet the burden of proof imposed upon him in contradicting the naturalization paper. This opinion states the following:

"Defendant argues that plaintiff is precluded from asserting any date other than the one contained in his naturalization papers since that fact, being a necessary one to establish jurisdiction in that proceeding is res adjudicata by reason of the naturalization decree. It is undoubtedly true that a decree of naturalization is a judgment and binding as such, but it is not conclusive as a declaration of every fact upon which it is based. See Mutual Benefit Life Ins. Co. v. Tisdale, 91 U. S. 238, wherein it is stated:

" 'A certificate of naturalization issues from a court of record when there has been the proper proof made of a residence of five years, and that the applicant is of the age of 21 years and is of good moral character. This certificate is, against all the world, a judgment of citizenship, from which may follow the right to vote and hold property. It is conclusive as such; but it cannot, in a distinct proceeding, be introduced as evidence of the residence or age at any particular time or place, or of the good character of the applicant.' "

See also Schnurman v. Metropolitan Life Ins. Co., 5 N. Y. S. (2d) 276, and cases therein cited. This same statement of the law leads to the further conclusion that there is no estoppel present to prevent plaintiff from questioning his age as given in the naturalization proceedings.

In this current case the jury was instructed that because plaintiff admitted that in 1908, under oath, he had stated in his declaration of intention that he was born on November 10, 1884, that before they could find that he had made an honest mistake at that time and that his true birth date was November 10, 1888, it would have to find that the evidence submitted to sup-

port this contention was first credible, and then that it was clear, satisfactory and convincing.

The answer to this suit simply alleges, inter alia, that plaintiff was born on November 10, 1884. The proceedings in his naturalization application were not set forth under "New Matter". It is therefore argued by plaintiff's counsel that defendant waived the defense of estoppel for the reason that Pa. R. C. P. 1030 specifically directs that "estoppel" as a defense is to be set up under the heading "New Matter". It is also pointed out that Pa. R. C. P. 1032 provides that a party waives all defenses that he does not present by preliminary objections, answer or reply. However, we need not rule on this contention for the reason that we have now concluded that the birth date given by an applicant for citizenship is not such an integral part of the judgment granting citizenship that he is forever foreclosed from questioning that birth date, if he claims an honest mistake has been made.

Defendant's motion for judgment n. o. v. will therefore be refused in an appropriate order.

The reason for a new trial pressed at the argument and in defendant's brief is that the evidence of the date of birth of plaintiff is not sufficiently clear and satisfactory to overcome the effect of the naturalization and marriage records. The trial court ruled that the testimony was sufficiently clear and satisfactory, provided the jury could place credence in it. This the jury did. Under the recent ruling and discussion of the law in the Harrison case, supra, we conclude that there was sufficient evidence that the true date of birth of plaintiff was November 10, 1888, to submit same to the jury.

It is further submitted that if n. o. v. or a new trial are respectively refused, there should be stricken from the amount of the verdict the sum of $402.90, covering the premiums that plaintiff paid to defendant insurance company for the years 1948, 1949 and 1950. In

support of this motion and request, the case of Sebastianelli v. Prudential Ins. Co. of America, 337 Pa. 466 (1940), was called to our attention. In the opinion the following is stated:

"There is one item in plaintiff's claim which was improperly allowed. The policy provided that defendant, upon receipt of proof of total and permanent disability, would waive payment of premiums during the period of such disability. Plaintiff nevertheless paid the premiums during the four years which elapsed between the time of the happening of the accident and the bringing of suit. He seeks their recovery on the ground that they were not payable under the terms of the policy. They were paid by him without any compulsion which the law recognizes as constituting coercion or duress; the fact that he may have been in a practical dilemma, not wishing to risk the forfeiture of his policy in case he should fail to prove the total and permanent disability which he claimed, made the payments no less voluntary within the meaning of the law. Therefore he cannot now recover them."

It will be observed that the above ruling was made because four years had elapsed between the time that plaintiff claimed that he was injured and the bringing of the suit. In this case plaintiff paid the three yearly premiums after the suit was commenced, namely, on January 27, 1948, although it must be granted that the complaint was not filed until March 24, 1949. However, plaintiff had submitted his proofs to defendant to support his contention that he was totally and permanently disabled before suit was brought, and his claim had been rejected. Plaintiff would be required to pay the premiums due on the $5,000 life insurance policy in the event that he did not prevail in this claim under the sick and accident policy agreement; therefore we do not believe the Sebastianelli case, supra, is

ruling under the facts in this proceeding. The evidence was ample for the jury to find that plaintiff was totally and permanently disabled under the provisions of the policy from April 15, 1947, to the date of trial. Therefore, the motions for a new trial, and also to reduce the verdict, will both be refused.