In re DI CLERICO.

(District Court, E. D. New York. January 28, 1908.)

ALIENS—NATURALIZATION—PROOF OF MORAL CHARACTER.

Under the naturalization act of June 29, 1906, c. 3592, § 4, subd. 4, 34 Stat. 596 [U. S. Comp. St. Supp. 1907, p. 422], which provides that to authorize the naturalization of an alien it must be shown to the satisfaction of the court that he has resided continuously within the United States five years at least, and that "during that time he has behaved as a man of good moral character," an applicant who continued to make use of a certificate of naturalization previously issued to him, after learning that he was not entitled to the same under the law and until it was canceled, cannot be considered as having behaved as a man of good moral character during that time, and is not entitled to apply for naturalization again until the expiration of five years.

On Motion for Leave to File Petition for Naturalization.

Arthur M. King, for petitioner.

CHATFIELD, District Judge. The applicant had previously a certificate of naturalization, which he obtained after a residence of 3½ years, the residence having been proved by the witness and not by the applicant himself. As now shown by the applicant, he could neither speak nor write English, and answered such questions as were asked him through the agency as interpreter of the very person who told him that he could be admitted as a citizen. Under such circumstances it is unjust to impute criminal knowledge to the applicant at the time of obtaining his original certificate. He seems to be a man of intelligence, and of some property, and in most ways would seem competent for admission. Two of his children were born in the United States. He states that in or about the year 1900 he learned something as to the five-year residential requirement of the naturalization law. He continued to make use of his papers until September, 1904, when they were taken away and subsequently canceled. In the spring of 1905, the applicant and his wife and two children went to Italy, where he stayed until February, 1907, upon a farm belonging to himself and his wife, where two more children were born.

The Naturalization Law of June 29, 1906, contains the following provision:

"Fourth. It shall be made to appear to the satisfaction of the court admitting any alien to citizenship that immediately preceding the date of his application he has resided continuously within the United States five years at least, and within the state or territory where such court is at the time held one year at least, and that during that time he has behaved as a man of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the same." Act June 29, 1906, c. 3592, 34 Stat. 596 [U. S. Comp. St. Supp. 1907, p. 422].

The applicant has asked permission of this court to be allowed to file a petition for admission as a citizen, under the rule of this court that no petition shall be filed by a person whose papers have previously been canceled, until after a preliminary investigation of his moral character and of the circumstances of the cancellation.

The applicant is required by Naturalization Law, § 4, par. 2, to state whether he has been denied admission as a citizen of the United States, and under this section a clause is inserted in the petition requiring the applicant to make an oath as to whether he has ever applied for citizenship papers. This, of course, brings out the fact of cancellation, as well as any previous denial of an application, and allows the applicant to bring before the court evidence to show that he has behaved as a person of good moral character for five years preceding his application.

In the present case Di Clerico continued to make use of his papers until September, 1904, and it does not seem to the court that he could have behaved as a person of good moral character prior to that time. Since that time he has plainly lived in Italy for such a period that it is impossible to determine upon the present application that he has retained a residence in the United States, or whether he continued of the intention to reside permanently in the United States, which intention was evidenced by his declaration of such intention, taken out in 1904, immediately after the surrender of his former papers. It

may also be questioned whether his long residence abroad would not defeat in any event the effects of such declaration.

But to return to the question of moral character. A person may be under indictment, may plead guilty, may serve a sentence, and during this time so live that he could be considered to be of good moral character, if the sentence were for a crime of which repentance and rectitude of life could show a reformation of character. Some crimes are such an index of bad moral character as to forever prevent the criminal from enjoying the benefits of citizenship, and willful and deliberate perjury, at the time of obtaining a certificate of naturalization, should impose upon the applicant the full effect of section 5392, Rev. St. [U. S. Comp. St. 1901, p. 3653]. This would prevent a person convicted or pleading guilty to such a charge from ever again making application for citizenship. Such a case as this is shown in In re Spenser, 5 Sawy. (U. S.) 195, Fed. Cas. No. 13,234. But it would seem that the frequent and unintelligent acts of illiterate and misled aliens should not be looked upon in the same light as a false oath of such character as to justify prosecution under section 5392, Rev. St.

However, it would seem to necessarily follow from the language of the statute above referred to, and from the nature of the crimes defined in the statutes relating to naturalization, that a man cannot behave as a person of good moral character, with respect to the rights of citizenship, when knowingly and willfully making a fraudulent or criminal use of his citizen papers. The statutory period of five years cannot begin until such fraudulent and criminal use has entirely ceased, and repentance, at least, can be observed. This applicant cannot claim such a return to a proper moral standard prior to September, 1904.

The application must be denied, without prejudice to renewal at a time when the above disabilities are entirely removed, and when he can show five years' residence in the United States.