## Petition of NYBO.

District Court, E. D. Michigan, S. D.
August 12, 1929.

No. 31925.

Beckenstein, Levin & Levin and Fred M. Butzel, all of Detroit, Mich., for petitioner.

O. T. Moore, District Director of Naturalization, and James L. Pangle, Assistant District Director of Naturalization, both of Detroit, Mich.

TUTTLE, District Judge. This petition for citizenship is opposed by the Bureau of Naturalization on the grounds that the applicant, Andrew Nybo, has not, during all of the required period preceding the hearing of said petition, "behaved as a man of good moral character attached to the principles of the Constitution of the Untied States and well disposed to the good order and happiness of the same." 8 USCA § 382. The court has heard the testimony of witnesses in open court. The facts are undisputed.

The petitioner was born in Norway on June 1, 1895, entered the United States lawfully as an emigrant on April 20, 1923, immediately took up his residence in the state of Michigan, and has been a resident of this division and district ever since that time. Petitioner is a highly educated man, of excellent habits, and has for many years held a position of trust with a large business concern here in Detroit.

On May 8, 1928, Nybo filed his petition for naturalization in this court, and was at that time qualified in every way for citizenship. The government contends that the conduct of the petitioner subsequent to the filing of the petition, and hereinafter related, furnishes grounds for denying the petition.

Nybo had for a long time prior to the filing of his petition been engaged to marry a young woman who was a citizen and resident of Norway. They were both anxious that she should, without delay, come to Detroit, Mich., that they should be married, that they should become citizens of the United States and permanent residents of Detroit, where petitioner desired to continue his employment with the business firm. In pursuance of this worthy purpose, the young woman attempted to secure a consular visa from the American consul in Norway. This was refused, not because of any fault or defect on the part of the young woman, but solely because the quota was exhausted for Norwegian emigrants to the United States. Being advised that the status of the quota (8 USCA § 211) was such that a delay of about two years would be necessary, they decided that she should come to Canada, that the petitioner should meet her in Canada, that they should be married in Canada, and that then she should attempt to lawfully enter the United States under the Canadian quota for emigrants. Pursuant to this undertaking, which they then believed to be lawful and possible, she came to Canada. The petitioner secured a two weeks' leave of absence from his firm; he met the young woman at the boat upon her arrival in Canada; they were promptly and on July 6, 1928, lawfully married in Canada; they went for a honeymoon trip in Canada. When petitioner's vacation period was drawing to a close, they went to the American consul at Windsor (Ontario, Canada), hoping and expecting that as the wife of Nybo she would be able to lawfully

enter the United States. Consular visa was again denied, and they were correctly advised that the young woman, then and now the wife of Nybo, could not lawfully enter this country except as a citizen of Norway and under the Norwegian quota. Petitioner and his wife were both greatly disappointed and disturbed. She could not speak English; she had no friends or relatives except her husband on this side of the Atlantic who could speak the Norwegian language. Nybo felt that he must return to his employment in the United States.

On July 19, 1928, under these trying circumstances, and with full knowledge that the wife, who had twice been refused consular visa, had no right to enter the United States, they went to a point in Canada on St. Clair river about 50 miles north of Windsor, hired a rowboat, and, under the guise of being out fishing, crossed the river, landed on the American side in a rural section of this division and district, and in that manner designedly accomplished the unlawful entry of Nybo's wife into the United States. They were promptly discovered and arrested by the immigration patrol and taken to Port Huron, Mich., before the nearest United States commissioner. Petitioner was charged with the offense of smuggling an alien into the United States in violation of section 8 of the Immigration Law (8 USCA § 144). Warrants for the arrest of Nybo and his wife under deportation proceedings were issued. Both made full and frank admission of their guilt. Nybo's employers and friends interceded in his behalf. The criminal prosecution of Nybo was dropped for the assigned reason that the only proof of the res gestæ was his own admission and the inadmissible testimony of his wife.

█ It seems plain that, if the authorities had desired so to do, sufficient additional and admissible testimony could have been obtained to prove the guilt of both Nybo and his wife. This court in this matter is not confronted with any of these technical difficulties. It is true that in the criminal case for violating the Immigration Law Nybo was presumed to be innocent, and the burden of proving his guilt rested upon the government. Here there is no such legal presumption of innocence in favor of petitioner, and the burden of establishing good conduct rests upon the petitioner. Neither are the strict rules of evidence applicable to criminal cases to be followed in a hearing of this kind. In re Vasicek (D. C.) 271 F. 326; In re Jensen (D. C.) 11 F. (2d) 414.

No criminal prosecution was ever instituted against the wife. Eventually the warrant of deportation against Nybo was canceled, and the wife was granted permission to depart voluntarily from the United States to any country of her choice. In fact, both Nybo and his wife have since their arrival on July 19, 1928, been permitted to remain in the United States, where he has continued the previous employment. He, his wife, and their baby a few weeks old are now living in Detroit.

█ The same influence and sympathies which have prevented the enforcement of the criminal law and the Immigration Law (8 USCA §§ 144, 154, 155) against Nybo and his wife are brought to bear upon this court in favor of granting this petition for naturalization. No one familiar with the situation can avoid great sympathy. The temptation which resulted in the violation of the law was very great. On the other hand, the dilemma is one of petitioner's own making. Thousands of aliens in excess of the quota are unsuccessful in seeking admission to our country. Many of them wish to join their loved ones on this side of the salt water. The law compels them to wait and to take their turn. Nybo and his wife were unwilling to comply with our Immigration Law; they deliberately cheated the law, and, through the sympathy of law-enforcing officers, they have enjoyed the fruits of their trickery. This court is now urged to give an added reward by granting this petition for naturalization. Citizenship is not a matter of right enjoyed by an alien, but is a reward given by the laws of this country to those aliens who are satisfactorily equipped and inclined mentally, and who, by consistent and continuous right living and obedience to law during the prescribed period prior to their admission, are found to be worthy of the high reward of citizenship. Johannessen v. United States, 225 U. S. 227, 32 S. Ct. 613, 56 L. Ed. 1066; United States v. Ness, 245 U. S. 319, 38 S. Ct. 118, 62 L. Ed. 321; Maney v. United States, 278 U. S. 17, 49 S. Ct. 15, 73 L. Ed. 156; United States v. Ali (D. C.) 7 F. (2d) 728.

█ This petitioner has not only deliberately violated the laws of this country, but his particular crime has to do with the subject of immigration, which is closely related to that of citizenship. The two subjects are so closely bound together that one of the reasons strenuously urged for granting citizenship in this case is that it will make it easier for officials to permanently withhold enforcement of the provisions of the Immigration Law against petitioner and his wife. This court

cannot find that one whose recent conduct has been such that he could be sent to prison for five years, and at the expiration of the term be deported from this country, has "behaved as a man of good moral character attached to the principles of the Constitution of the United States and well disposed to the good order and happiness of the same." This court disclaims any intent to criticize public officials, individually or collectively, for failing to enforce the provisions of the Immigration Law against Nybo and his wife. This court is not here called upon to pass upon that question. Undoubtedly there are some extreme cases in which public officials are justified in not enforcing the provisions of the criminal law. The court is called upon to use a different set of scales in weighing conduct on a petition for naturalization from those used in weighing conduct in a criminal case. Conduct may not be sufficiently bad to justify criminal prosecution and still fall far short of being good enough to reward with citizenship. We are not here dealing with the question of enforcing the criminal law, but with the question of whether or not this petitioner has earned, by his conduct, the high reward of citizenship in the United States of America. This court is unwilling to make a finding that one who has deliberately violated the laws of this country is entitled to that high reward. Neither is this court willing to consider as an argument in favor of citizenship the fact that the granting of citizenship would make it easier for petitioner to escape the penalties of the law which he had violated. Granting of citizenship is a question which must be approached from the standpoint of the advantages to result to this country rather than the benefits which would flow to the petitioner.

The petition for naturalization is denied.