## In the Matter of the Petition of NICOLA CAPOZZI.

Supreme Court, Onondaga County, June 15, 1936.

M. John Mollica, for the government.

John C. Smith, for the petitioner.

DOWLING, J. Nicola Capozzi emigrated to the United States in 1911. In 1913 or 1914 he settled in Syracuse, N. Y., where he has· since maintained a residence. June 21, 1935, he presented to the proper authorities at Syracuse a verified petition wherein he applied to be naturalized as an American citizen. His petition was followed by the usual routine examination. Finally it came on for a hearing at a regular naturalization term of the Supreme Court of the State of New York, held at Syracuse, April 7, 1936. An oral hearing was had on that date and the matter was adjourned to April 23, 1936, for the purpose of a further hearing. On the adjourned date,. witnesses were sworn in behalf of the government and of the petitioner. The evidence adduced disclosed the following facts bearing upon the petitioner's record: 1915, convicted of public intoxication; 1918, arrested for assault; acquitted; 1920, convicted of extortion and served three years Auburn prison; 1924, arrested for driving an automobile while intoxicated; 1928, arrested for public intoxication; 1935, arrested and charged with evasion Liquor Tax Laws; discharged; 1915–1936, inclusive, paid fines for parking violation.

In addition to the foregoing, petitioner, testifying in his own behalf, stated he and his wife and children were regular attendants at St. Peter's Church in Syracuse. When asked the name of the pastor of that church, he replied, " Some name — Caratza — Some name like that  *  *  *  Scatta — something like that." The pastor of the church, Father Angelo Strazzoni, testified (unwillingly) that petitioner was not a regular member of his church although he lived in the parish. The father said, " I saw him there, but doesn't come regularly for the services." The father said he did not know petitioner's wife and children. Carmen Luzzo, a member of the Syracuse police department, and John Smith, petitioner's attorney, testified that petitioner is a man of good moral character and that his reputation in the community is good. The supporting witnesses of the petitioner likewise swore he was a man of good moral character. It further appeared that petitioner had applied to the Governor of New York, about June 1, 1935, for a pardon. The Governor had not acted upon the application on April 23, 1936. This is not unusual as it takes twelve to eighteen months for the applications to reach the Governor for decision.

The Federal examiner objects to the admission of the petitioner and moves for a dismissal of his petition on two grounds: (a) The petitioner is not a person of good moral character, is not attached to the principles of the Constitution and is not well disposed to the good order and happiness of the same; (b) that petitioner cannot be admitted to citizenship until he has received a pardon from the Governor of New York.

Section 382 of title 8 of the United States Code provides: " No alien shall be admitted to citizenship unless (1) immediately preceding the date of his petition the alien has resided continuously within the United States for at least five years and within the county where the petitioner resided at the time of filing his petition for at least six months, (2) he has resided continuously within the United States from the date of his petition up to the time of his admission to citizenship, and (3) during all the periods referred to in this section he has behaved as a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States. At the hearing of the petition, residence in the county where the petitioner resides at the time of filing his petition, and the other qualifications required by this section during such residence, shall be proved by the oral testimony of at least two credible witnesses, citizens of the United States, in addition to the affidavits required by section 379 of this title to be included in the petition."

" Character " is not synonymous with " reputation." Character refers to what a person really is and not what he is supposed to be. (*United States* v. *Hrasky*, 240 Ill. 560; 88 N. E. 1031.) The character of the petitioner must meet the standards of the average citizen of the community in which the petitioner resides. (*Matter of Hopp,* 179 Fed. 561 [D. C. Wis. 1910].) The petitioner must allege and prove his good moral character. (*United States* v. *Leles*, 236 Fed. 784 [D. C. Cal. 1916]; *United States* v. *Wexler*, 8 F. [2d] 880 [D. C. N. Y. 1925]; Temple Law Quarterly, May, 1936, vol. X, No. 3, pp. 272, 284.) " The behaviour of the applicant during all the time of his residence within the United States is material. The good of the country does not require, and it does not appear to be the policy of the law to promote, the naturalization of aliens who have at any time during their residence in the United States behaved otherwise than as persons of good moral character. The citizenship of the country is sufficiently alloyed and debased by the presence of immoral natives without the addition of those born in foreign countries. The applicant must not simply have sustained a good reputation, but his conduct must have been such as comports with a good character. In other words, he must have behaved — conducted himself — as a man of good moral character ordinarily would, should or does. Character consists of the qualities which constitute the individual; reputation the sum of opinions entertained concerning him. The former is interior, the latter external. The one is the substance, the other the shadow. (N. Y. P. Code, 120; [*Carpenter* v. *People*], 8 Barb. 603.)" (*Matter of*

*Spenser*, 5 Sawy. [U. S. Ninth Circuit] 195, 197; 22 Fed. Cas. 921.) " American citizenship is a status of privilege, power, and honor of inestimable value. Aliens are admitted thereto only when to the interest and advantage of the Nation and its present membership, and not at all merely to gratify the aliens' desire or to serve their interest, and only when they are of worthy character proven by time. Wherein the national organization will be strengthened and the national membership benefited by incorporating this petitioner [who had been convicted and sentenced for manslaughter] (brackets ours) therein, by taking him into partnership, is not perceived. * * * Undoubtedly the interest of society requires the rehabilitation of the criminal as soon and as far as may be. But this does not import that society will ignore the crime, relieve the offender of all consequences, and upon him bestow undeserved privileges, rights and honors, viz: the enviable grant of American citizenship." (*Matter of Caroni*, 13 F. [2d] 954, 955.) Ordinarily alien criminals should be deported rather than admitted to citizenship. (*Matter of Ross*, 188 Fed. 685.) " Where a petitioner has been found guilty of a felony and sentenced, it is the practice of the Naturalization Bureau not to act on his application, unless a pardon is first secured from the Governor of the State where that felony was committed." (Temple Law Quarterly, *supra*, p. 284.) Veracity and honesty are essential elements of good character. (*Matter of O————*, 73 Wis. 602; 42 N. W. 221, 225.) Hence a man who perjures himself is not a man of good moral character. (*Matter of Spenser, supra*.)

" If it is made to appear that an alien, applying for admission to citizenship, has not behaved as a man of good moral character while residing in the United States, the court, in the exercise of a sound discretion, may refuse his petition, notwithstanding the applicant's good behaviour during the five years preceding his application. It is the duty of the court to determine, taking into account the whole career and conduct of the applicant, in so far as it is made to appear, whether such a one possesses the necessary qualifications, moral and otherwise, to entitle him to the rights of citizenship. * * * Citizenship is not to be debauched by conferring on the criminal class its sacred privileges." (*Matter of Ross*, 188 Fed. 685, 686.) " Some crimes are such an index of bad moral character as to forever prevent the criminal from enjoying the benefits of citizenship, and willful and deliberate perjury, at the time of obtaining a certificate of naturalization, should impose upon the applicant the full effect of Sec. 5392 Rev. St. (U. S. Comp. St. 1901, p. 3653). This would prevent a person convicted or pleading guilty to such a charge from ever again making application

for citizenship." (*Matter of Di Clerico*, 158 Fed. 905, 907.) "While a pardon releases the punishment and blots out the existence of guilt, it does not obliterate the fact that the applicant has not behaved as one well disposed to the good order and happiness of the United States." (*Matter of Addis*, 252 Fed. 886, 887.) Traffic violations, no matter how numerous, do not reflect on moral character. In Massachusetts and Connecticut the courts have denied citizenship to aliens who have been guilty of driving automobiles while under the influence of liquor. In many States citizenship has been denied for violation of the Eighteenth Amendment. (Temple Law Quarterly, *supra*, p. 286.) In *United States* v. *Schwimmer* (279 U. S. 644, 649 [1929]) Mr. Justice BUTLER says, "the statutes prescribing qualifications and governing procedure for admission [to citizenship] are to be construed with definite purpose to favor and support the Government." (Brackets ours.)

There are more than 2,000 courts in this country, ranging from city courts to Federal courts, passing upon naturalization cases. Naturally there is a confusing array of decisions due to this fact. (Temple Law Quarterly, *supra*, p. 274.) This confusion arises due to varying conditions in the different jurisdictions. The decisions are uniform in that the applicant for citizenship must be a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States.

Upon the record before the court the petitioner does not measure up to this uniform standard. He was not entirely truthful in his testimony. He is seeking citizenship, in my judgment, not because he is well disposed to the good order and happiness of the United States or attached to the principles of the Constitution, but because he desires to procure a license to sell intoxicating beverages. The crime of extortion, of which petitioner was convicted, is a most reprehensible one, an element of the crime of kidnapping. People who commit crimes of this character seldom repent and are too callous to reform.

It is in exceptional cases only that persons who have been convicted of a felony should be admitted to citizenship. Such persons should never be granted citizenship papers unless they have procured in advance full and unconditional pardons. As a condition of entertaining the petitions of such persons, the court should require them to produce unconditional pardons. Too much reliance should not be placed upon the fact that a pardon has been granted. A pardon lacks the cleansing powers of baptism. It never seems to efface the stigma of conviction.

Persons lacking good moral character should never be clothed with the sacred and sovereign privilege of citizenship. The names of such, if admitted, would add no lustre to the roll of citizens of this Republic.

Petitioner has failed signally to establish his right to citizenship papers. His application must be denied and his petition dismissed.

Enter order accordingly.