**Petition of LUDECKE.**

No. 119289.

District Court, E. D. Michigan, S. D.

Feb. 26, 1940.

Robert C. Wilson, Naturalization Examiner, of Detroit, Mich., for the Government.

Kurt Georg Wilhelm Ludecke, in pro. per.

TUTTLE, District Judge.

This petition for naturalization was filed in this court on October 14, 1938. The petitioner alleges therein that he was born in Berlin, Germany, on February 5, 1890, of the German race; that he is a writer; that on June 13 1927, while in the United States on a visit, he married his wife Mildred, a native-born American citizen, at Bowling Green, Ohio, and that she resides with him. The petitioner further shows that he entered the United States for permanent residence on August 4, 1927, at Detroit, Michigan, by way of the Detroit and Windsor ferry, and that he has resided in the United States continuously since that time, and in Detroit, Wayne County, Michigan, continuously since August, 1938; that he is not a disbeliever in or opposed to organized government or a member of or affiliated with any organization or body of persons teaching disbelief in or opposed to organized government; that he is not a polygamist nor a believer in the practice of polygamy; that he is attached to the principles of the Constitution of the United States and well disposed to the good order and happiness of the United States; that it is his intention to become a citizen of the United States and to renounce all allegiance to the German Reich, of which he is a citizen, and that it is his intention to reside in the United States permanently. Further, that he has not previously filed a petition for naturalization.

This petition for naturalization was filed under Section 2 of the Act of September 22, 1922, as amended May 24, 1934, § 4, 8 U.S.C.A. § 368, the petitioner being the husband of an American citizen, and therefore not being required to have a declaration of intention, and being required to prove only three years of residence.

The petition came on for hearing before this Court on June 16, 1939, and after such hearing it was continued for further investigation as to the petitioner's attachment to, and belief in, the Constitution of the United States, and to allow the Court more time in which to become familiar with the writings of the petitioner. The petition again came on for hearing on December 5, 1939, after which it was again adjourned, for the same reason, to December 18, 1939. On December 5, 1939, the book, "I Knew Hitler", of which the petitioner is the author, was introduced into evidence

by the Government, to which the petitioner offered no objection. Petitioner was advised of his right to be represented by counsel, but stated that he preferred to represent himself.

The sole question before the Court is: Has the petitioner, during the five years immediately preceding the filing of his petition for naturalization, behaved as a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States, as required by the general naturalization law (8 U.S.C.A. § 382)?

The Court finds from the oral testimony of the petitioner and his own book, which was properly introduced into evidence, and every word of which the Court has carefully read, that the petitioner first came to the United States in 1920 from Mexico, for a visit, but stayed only a short time, returning to Germany. He later became acquainted with Adolph Hitler, and after joining the Nazi cause, he began publicizing the Nazi cause and the personality of Hitler (p. 40). About 1923, he went to Italy as the emissary of Hitler to confer with Mussolini and publicize the Nazi cause in Italy. Later, in Germany, he organized and equipped storm troops for Hitler, and although he did this surreptitiously, he stated that he broke no laws in so doing, except to collect a troop and arsenal (p. 112). On January 4, 1924, he received credentials from Hitler for the purpose of representing the party in North America, and especially to solicit financial means in the interest of the Nazi party (p. 190). He arrived in this country in late January of 1924, and while on this trip contacted Henry Ford, and W. J. Cameron of the Ford Motor Company, for the purpose of inducing them to support the Nazi cause. He states (p. 193) that Ford's then attitude on the Jewish question seemed to assure cooperation. He also attempted to interest the Ku Klux Klan in the cause of the Nazi party, because of its attitude on the Negro, Jewish and Catholic questions. However, both attempts were unsuccessful, and he referred to this trip as "An Unprofitable American Begging Tour" (p. 213). He then returned to Germany where he continued his work in and for the Nazi party. In 1926, he returned to the United States for the same purpose, and remained here until the summer of 1927, when he established a residence in Canada, and soon thereafter entered the United States, August 4, 1927, for permanent residence on the German quota. After being admitted to the United States for permanent residence, he continued his work of publicizing the Nazi cause, and kept in touch with Nazi activities. In July of 1930, he returned to Germany where he remained until November, 1930. Although while in the United States he had employment at intervals, he still worked for the Nazi party (p. 328). This continued until July, 1932, when he again returned to Germany, where he stayed until October, 1932. While on this trip, he advocated to Hitler an alliance with (p. 467) Communist Russia, as an alternative to a compromise with capitalism (p. 467); also, while on this trip he conferred with Hitler about becoming a citizen of the United States, explaining that he had a declaration of intention, which was true, having made declaration of intention No. 74203 in the United States District Court, Detroit, Michigan, on August 6, 1927, and stating that American citizenship was—in some ways—desirable. However, Hitler advised him to remain a German (p. 490). He followed Hitler's advice and his declaration of intention became void. On September 28, 1932, he received credentials to represent the Nazi party in the United States, and after returning in October of 1932, did so represent the Party in the United States until his last visit to Germany in March of 1933, after Hitler's rise to power in January, 1933. Several days after Hitler's rise to power in January 1933, the petitioner broadcast an appeal to Germans in the United States from Washington (p. 561) in which he stated "America too needs a Hitler or a Mussolini". He states that his talk was criticized as the "radio exuberances of the Nazi Ambassador" (p. 561). In March of 1933 for party reasons he returned to Berlin (p. 564). While en route, he cast a ballot for the Nazi party, the ship being in constant touch with Germany. After arriving in Germany, he found that the set-up of the Party and its leaders was different than he had anticipated and that either he disagreed with the way things were being run, or that they disagreed with his ideas. It appears that the petitioner's only disagreement with Hitler and the Party, was as to the means and not as to the end.

It further appears that the petitioner expected to be the official representative of the Nazi party (after it came into power) in the United States (pp. 608, 609). As

a result, when this failed to materialize, he was extremely critical, and thus drew the ire of the Party and Hitler himself. Therefore, he soon found himself in a concentration camp as a political prisoner, where he remained until his escape in the spring of 1934. Even after his experiences in the concentration camp, and his escape, it appears doubtful that he had completely renounced the Nazi party and given up hope of again being restored to the good graces of Hitler, as he addressed a letter to Hitler from Geneva in the spring of 1934, giving Hitler a chance to declare himself (p. 752). There was no reply, so he returned to the United States by way of Canada and was admitted to the United States at Port Huron, Michigan, on a re-entry permit, on June 22, 1934.

There is no evidence of the petitioner engaging in any gainful occupation since returning to the United States on June 22, 1934. His sole means of livelihood seems to have been gained from his writing and lecturing of his associations with, and his knowledge of, Hitler and the Nazi Party. The petitioner admits that he is a revolutionary and that he subscribes to the theory that the end justifies the means (p. 292). The petitioner further states (p. 506), referring to his 1932 trip to Germany, that he committed one of the great stupidities of his life by returning to the United States. The petitioner submitted an application to file a petition for Naturalization in New York, N.Y., on July 26, 1934, but was advised that the continuity of his residence for naturalization purposes had been broken by his absence from the United States for a period of more than one year. However, his residence had not been broken from an Immigration standpoint, as on each return to the United States, he was in possession of a re-entry permit.

His present petition is filed under Section 2 of the Act of September 22, 1922, as amended May 24, 1934, § 4, 8 U. S.C.A. § 368, which provides that the spouse of an American citizen does not gain American citizenship by marriage, but may apply for naturalization without having a declaration of intention, and need prove only three years' residence, and that he must comply with all other requirements of the naturalization laws. Inasmuch as the general naturalization law (8 U.S.C.A. § 382) requires that an applicant for naturalization must prove five years of good moral character and attachment to the principles of the Constitution of the United States for a period of at least five years, the Court may require that this petitioner prove good moral character and attachment to the principles of the Constitution of the United States for at least five years, and for a longer period if deemed necessary. The petitioner has offered no satisfactory evidence that he has ceased to believe in revolutionary principles, as enunciated in his own book and testimony. Therefore, since the petitioner is seeking a privilege, and citizenship is bestowed as a privilege and not as a matter of right, he has the burden to establish that he is and has been for at least five years attached to the principles of the Constitution of the United States and well disposed to the good order and happiness of the same. That he has failed to do.

Two witnesses of good standing voluntarily appeared and testified as to the character of recent addresses made by petitioner, showing his lack of attachment to the principles of our Constitution and the slavish attachment to Hitler and the present German cause. I made voluminous notes as I read his book, "I Knew Hitler". At the hearing he claimed to have changed his views since the book was written. In every instance when I brought up a certain subject in the book and asked him about it, he defended the statement in the book so vigorously that it was plain he had not changed his views in any respect. After listening to him for two days in open court, it is apparent that while he is angry because Hitler did not give him the political position he sought and instead threw him into a concentration camp, his political views are the same as they were when he wrote the book and very far from being in accord with the Constitution and laws of the United States.

The petition is denied, with prejudice, for five years.