## In re TARAN.

District Court, D. Minnesota,
Third Division.

Sept. 30, 1943.

536

Lewis L. Drill, of St. Paul, Minn., for petitioner.

Victor E. Anderson, U. S. Atty., and William P. Murphy, Asst. U. S. Atty., both of St. Paul, Minn., for the United States.

BELL, District Judge.

A motion was presented to this court July 2, 1943, for an order striking certain language from the record made herein on July 15, 1942, denying a petition for naturalization. The petition in this proceeding, supported by two witnesses as usual, was filed August 18, 1941, under Section 310(a) of the Nationality Act of 1940, 54 Stat. 1144, 8 U.S.C.A. § 710(a). The motion is to strike from the "decision, order or judgment" of the Court, the following: "with prejudice for a period of five years."

The record in question in the office of the Clerk follows:

"U. S. Department of Justice
"Immigration and Naturalization Service
"Date July 15, 1942. List No. 232

"Naturalization Petitions Recommended to be Denied

"To the Honorable the District Court of the United States, sitting at St. Paul, Minnesota:

"The undersigned, duly designated under the Nationality Act of 1940 (Public, No. 853, 76th Congress), to conduct preliminary hearings upon petitions for naturalization to the above-named Court and to make findings and recommendations thereon, has personally examined under oath at a preliminary hearing each of the following two (2) petitioners for naturalization and their required witnesses, has found, for the reasons stated below, that such petitions should

## 537

not be granted, and therefore recommends that each such petition be denied.

| No. | Petn. No. | Name of Petitioner | Reason for Denial |
|---|---|---|---|
| 1 | 6802 | Samuel Harry Taran | Bad moral character* |
| 2 | 7137 | Elizabeth Zeltner | Petitioner is deceased |
| 3 | | | |
| 4 | | | |
| 5 | | | |
| 6 | | | |
| 7 | | | |
| 8 | | | |
| 9 | | | *Petition of Samuel Harry |
| 10 | | | Taran is denied with prej- |
| 11 | | | udice for a period of five |
| 12 | | | years. |

"Respectfully submitted:

"Date July 15, 1942

"Maurice Sher
(Signature of designated examiner or officer)

"United States of America
"District of Minnesota   ss:
"Third Division

In the District Court of the United States

"Upon consideration of the petitions for naturalization listed above, and the findings and recommendations thereon of a duly designated examiner or officer of the Immigration and Naturalization Service, at a final hearing in open court this 15th day of July, A.D.1942, it is hereby ordered that each of the said petitions be, and hereby is, denied.

"By the court:

"Robert C. Bell, Judge."

Section 307 of the Nationality Code, 8 U.S.C.A. § 707(a), provides: "No person, except as hereinafter provided in this chapter, shall be naturalized unless such petitioner, (1) immediately preceding the date of filing petition for naturalization has resided continuously within the United States for at least five years and within the State in which the petitioner resided at the time of filing the petition for at least six months, (2) has resided continuously within the United States from the date of the petition up to the time of admission to citizenship, and (3) during all the periods referred to in this subsection has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States."

Section 310 of the Code, 8 U.S.C.A. § 710 (a) (1) (2), provides:

"Any alien who, after September 21, 1922, and prior to May 24, 1934, has married a citizen of the United States, or any alien who married prior to May 24, 1934, a spouse who was naturalized during such period and during the existence of the marital relation may, if eligible to naturalization, be naturalized upon full and complete compliance with all requirements of the naturalization laws, with the following exceptions:

"(1) No declaration of intention shall be required;

"(2) In lieu of the five-year period of residence within the United States, and the six months' period of residence in the State where the petitioner resided at the time of filing the petition, the petitioner shall have resided continuously in the United States for at least one year immediately preceding the filing of the petition."

Samuel Harry Taran, formerly Schmiel Taran, the petitioner, was born June 15, 1898, in Ivnica, Russia, and emigrated from Bremen, Germany, to the United States entering at Galveston, Texas, June 21, 1912. He married a citizen of the United States June 5, 1933, and has three children.

It is unnecessary to speculate as to whether the petitioner "has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States." The records of the courts and police departments of Minneapolis, St. Paul and other cities reveal his conduct for a period of twenty years and obviously furnish conclusive proof of the character and inclinations of the man:

The petitioner was indicted February 18, 1936, in the District Court of the United States for the District of Minnesota on four counts charging a violation of Section 3281, R.S., 18 Stat. 310, 26 U.S.C.A. Int.Rev. Code, § 3253, Section 3296 R.S., 19 Stat. 393, as amended, 26 U.S.C.A. Int.Rev.Code, § 2913 and the Liquor Taxing Act of 1934, 26 U.S.C.A. Int.Rev.Code, § 2803(a), felonies. He was tried before a jury, found guilty and on May 25, 1936, sentenced to the Minneapolis City Work House for one year on each of four counts, to run concurrently, and to pay a fine of $200 on each of three counts. Taran v. United States, 8

Cir., 88 F.2d 54. He was released from the service of these sentences on February 1, 1938, The petition was filed herein approximately 3½ years and presented to the Court approximately 4½ years after the petitioner was released from prison.

The petitioner was indicted and convicted by a jury in the District Court of Hennepin County, Minnesota, in 1927 on a charge of grand larceny in the first degree and sentenced to the State Penitentiary for a term of ten years. He appealed to the Supreme Court where the judgment was affirmed on January 4, 1929, 176 Minn. 175, 222 N.W. 906, 908. In affirming the judgment the Court said: " * * * the verdict is well supported by the evidence." The petitioner served three years and two months in the State Penitentiary at Stillwater and was paroled March 1, 1932.

The petitioner was charged with assault in the second degree in Hennepin County, Minnesota, January 25, 1926, convicted and sentenced to serve six months in the Minneapolis Work House.

The petitioner was indicted in the District Court of the United States for the District of Minnesota, December 8, 1925, with four co-defendants on two counts, one charging a conspiracy and the other illegal possession of a still. One of the co-defendants was tried, convicted and sentenced to serve two years in the penitentiary. The case against the petitioner herein was dismissed November 17, 1929.

The petitioner was indicted with eleven co-defendants in the District Court of the United States for the District of Minnesota September 24, 1927, in an indictment containing three counts charging a violation of Section 37 of the Criminal Code, 18 U.S.C.A. § 88, Sections 3258 and 3282 R.S., 26 U.S.C.A. Int.Rev.Code, §§ 2810, 2834. Some of these defendants entered a plea of guilty but the case was dismissed as to the petitioner herein November 14, 1929.

The petitioner in April, 1920, was charged with grand larceny, theft of an automobile, tried and found not guilty in the District Court of Hennepin County, Minnesota.

The petitioner was fined $100 in Minneapolis August 8, 1921, on a liquor law violation.

The petitioner was fined $10 in Minneapolis January 12, 1922, for assault and battery.

The petitioner was charged with grand larceny, theft of an automobile in Hennepin County, Minnesota, August 9, 1922, tried and acquitted.

The petitioner was convicted of grand larceny, Minneapolis, in March, 1924, and sentenced to serve a term of thirty days in the Minneapolis Work House.

In December, 1925, the petitioner was involved in a "high-jacking fight" in an apartment in St. Paul in which he was shot and wounded. In this connection he was charged with assault in the second degree, tried and acquitted.

The petitioner was tried on a charge of assault and battery, St. Paul, and acquitted February 3, 1934.

The records of the police departments of Minneapolis and St. Paul show more than twenty arrests of the petitioner from September 5, 1918, to February 3, 1934, on various charges including theft of automobiles, receiving stolen property, illegal possession of liquor, assault, perjury, and for investigation in connection with bank robbery. Some modest fines were paid by the petitioner; but, it must be said, that in most instances he escaped conviction or even prosecution.

In addition to the foregoing, the petitioner was indicted in 1934 at Chicago, Illinois, on charges of conspiracy and possession of stolen bonds. About the same time he was wanted in Nebraska and Kansas in connection with bank robberies, but he successfully resisted extradition.

■ An arrest not followed by conviction ordinarily may not be shown, but the strict rules of evidence are not applied in naturalization hearings. Petition of Nybo, D.C., 34 F.2d 161.

Mrs. Florence Taran was divorced from her husband, Samuel Harry Taran, in the District Court of Ramsey County, Minnesota, on April 20, 1933, and he was married a second time to Diane Lomberg of Chicago June 5, 1933.

The petitioner was denied citizenship in the District Court of Ramsey County, Minnesota, August 8, 1922, because of bad moral character.

In the light of these facts, some well established legal principles should be observed:

■ As an inherent right of sovereignty the United States is vested with the power to prescribe the conditions of admission to

citizenship. The exercise of such power confers no right on the alien but merely extends to him a privilege which may enable him to become a citizen if he complies with the conditions prescribed by Congress. United States v. Schwimmer, 279 U.S. 644, 49 S.Ct. 448, 73 L.Ed. 889; United States v. Ginsberg, 243 U.S. 472, 37 S.Ct. 422, 61 L.Ed. 853; Luria v. United States, 231 U.S. 9, 34 S.Ct. 10, 58 L.Ed. 101; Johannessen v. United States, 225 U.S. 227, 32 S.Ct. 613, 56 L.Ed. 1066; In re Warkentin, 93 F.2d 42, certiorari denied 304 U.S. 563, 58 S. Ct. 943, 82 L.Ed. 1599.

■ Congress has plenary power over naturalization. The application of this power may be delegated to the Courts. Congress can deny citizenship to aliens entirely and it may prescribe any conditions for granting the privilege it sees fit. No alien has the slightest right to naturalization unless all the statutory requirements have been fully met. Schneiderman v. United States, 320 U.S. 118, 63 S.Ct. 1333, 87 L.Ed. ——, decided by the Supreme Court June 21, 1943.

■ A petitioner for citizenship, like other suitors who commence proceedings in a court of justice to secure a determination of an asserted right, must allege compliance with all the conditions on which the alleged right is dependent, and he has the burden to prove these allegations to the satisfaction of the Court. Tutun v. United States, 270 U.S. 568, 46 S.Ct. 425, 70 L.Ed. 738; Petition of Zele, 2 Cir., 127 F.2d 578.

■ An alien has no claim to citizenship as a matter of right; it is a reward bestowed on persons of good character, on those properly inclined toward the Constitution and laws of the United States, on those who understand the requirements of citizenship, on those who appreciate the customs and ideals of American institutions, and on those who, by obedience to law, have demonstrated that they are worthy of such a gift. United States v. Ness, 245 U.S. 319, 38 S.Ct. 118, 62 L.Ed. 321; Johannessen v. United States, supra; Petition of Nybo, D. C., 34 F.2d 161, affirmed 6 Cir., 42 F.2d 727.

■ Section 307(a) of the Act requires proof of good moral character for five years. Section 310(a) of the Act reduced the period of required residence of the spouse of a citizen of the United States to one year; but the statute did not reduce the period that good moral character must be proved, and the Court can require proof for at least five years and for a longer period if deemed proper. In re McNeil, D. C., 14 F.Supp. 394, 395; Petition Ludecke, D. C., 31 F.Supp. 521. In the McNeil case, in which the petitioner for naturalization had been convicted of embezzlement, the Court said: "Even after termination of parole and the expiration of the five-year period, it rests within the sound discretion of the court, dependent upon the facts of each case, whether the gift of citizenship shall be postponed or barred forever."

■ Where there has been a conviction of a felony, the Court may deny citizenship although a petitioner for naturalization is able to prove good conduct for a long period of years. In re Caroni, D. C., 13 F.2d 954; In re Ross, C. C., 188 F. 685.

■ The denial of an application for citizenship on the ground that the petitioner was not a person of good moral character is a judicial determination that at the time he was not, and it requires proof of good moral character for a period of at least five years from the date of the denial; consequently, the candidate is debarred from again seeking citizenship for five years thereafter. In re Kornstein, D.C., 268 F. 172; In re Di Clerico, D. C., 158 F. 905; In re Hartman, D. C., 232 F. 797; In re Capozzi, 160 Misc. 200, 289 N.Y.S. 869.

■ The test is not the length of time an alien has resided in the United States without being convicted of a crime, but whether the moral character and mental attitude of the individual entitle him to citizenship, Schurmann v. United States, 9 Cir., 264 F. 917, 18 A.L.R. 1182, and the government may inquire into his entire life history to ascertain his true character and inclinations. United States v. Bressi, D. C., 208 F. 369.

■ Citizenship may be granted when it will be beneficial to the welfare of the nation and not merely to serve the interest of the alien or to gratify his desire to be a citizen. In re Caroni, supra. The Court in the Ross case, supra [188 F. 686], said: "Citizenship is not to be debauched by conferring on the criminal class its sacred privileges."

As the petitioner in this proceeding has been convicted of crimes involving the vilest moral turpitude, as he has flouted the laws of the United States for many years, as he has shown a total disregard of the welfare of society, there is no escape from

540

the conclusion that at the time of his hearing he did not meet the requirements of the statute and was not entitled to citizenship. He cannot change his character or his attitude toward society over night any more than the "leopard can change his spots." Possibly he can revolutionize himself, and, by exemplary conduct, convince a judge of some court in the distant future that he is worthy of citizenship. Suffice to say that five years hence is a brief time for him to purge himself of the record he has made so as to justify such action.

There is a simple reason, however, why the motion should be denied. The order of the Court does not contain the provision sought to be stricken. The record of the clerk contains two parts; first, the report and the record of the examiner, and second, the order of the Court. The order merely denies the petition for naturalization; the report of the examiner, which does contain the language, is not a part of the order of the Court. The motion must be considered and decided on the record as it stands.

There is another reason for denial of the motion. Assuming that the provision is a part of the order and that the Court was without authority under the law to make it, as contended by petitioner, it would be surplusage and without force and effect, and such a change in the record would accomplish nothing.

Motion denied.