Samuel H. TARAN, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 15950.

United States Court of Appeals
Eighth Circuit.

May 12, 1959.

Rehearing Denied June 3, 1959.

John W. Graff, St. Paul, Minn. (A. Jerome Hoffmann and Hoffmann, Donahue, Graff, Schultz & Springer, St. Paul, Minn., on the brief), for appellant.

Clifford Janes, Asst. U. S. Atty., St. Paul, Minn. (Fallon Kelly, U. S. Atty., and Kenneth G. Owens, Asst. U. S. Atty., St. Paul, Minn., on the brief), for appellee.

Before JOHNSEN, VAN OOSTERHOUT and MATTHES, Circuit Judges.

JOHNSEN, Circuit Judge.

Appellant was found guilty by a jury, on each of the two counts in an indictment, of having violated 18 U.S.C. § 1505.

In general, § 1505 serves a purpose in the administrative field similar to that of §§ 1503 and 1504 in the judicial field. The part of it that is here pertinent deals with contaminations of, or endeavors to contaminate, the administration of the law involved "in any proceeding pending before any department or agency of the United States". More specifically, it creates a criminal offense against "Whoever corruptly, or by threats or force, or by any threatening letter or communication influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede

the due and proper administration of the law under which such proceeding is being had before such department or agency of the United States * * * ".

Count I of the indictment charged appellant with having corruptly endeavored to influence, obstruct and impede, and also with having succeeded in doing so, the due and proper administration of the law in relation to a deportation proceeding pending against him before the Immigration and Naturalization Service. Count II made a similar charge against him as to the administration of the law relating to a naturalization proceeding, alleged to have been pending before the Immigration and Naturalization Service from the fact that a preliminary application to file a petition for naturalization had been submitted by appellant to the Service.

Appellant is an alien, who had entered the United States as an immigrant in 1912, at the age of 15. He had sought to become naturalized in the federal district court in Minnesota in 1941, but the court had denied his petition on the ground of "bad moral character", in accordance with the report and recommendation of an examiner of the Immigration and Naturalization Service. The court, in a later published opinion, In re Taran, D.C.Minn., 52 F.Supp. 535, set out a list of appellant's numerous conflicts and brushes with the law. Constituting a part of his unsavory record was a conviction and sentence in 1929 in the Minnesota state courts for grand larceny in the first degree. See State v. Taran, 176 Minn. 175, 222 N.W. 906.

Thereafter, in 1945, appellant moved from Minnesota to Florida, where he has since had his residence. In February, 1951, he undertook to submit to the Immigration and Naturalization Service, at its field office in Miami, Florida, upon official Form N-400, as required by 8 CFR 1949 ed. § 370.1, a preliminary application to file a petition for naturalization in the federal district court there.

In submitting the application, he indicated that he would attempt to obtain a pardon from the Minnesota State Board of Pardons on his 1929 conviction, referred to above. The Immigration and Naturalization Service took note of this expressed intention and made return to appellant of his preliminary application on February 28, 1951, stating in its letter that "It is requested that you do not submit the application until all required documents can accompany it". The letter listed, as being required to accompany the application upon its submission, "Pardon for violations in the state of Minnesota", and "Three photographs of yourself", of specified size and pose.

Appellant, however, did not again submit a Form N-400 preliminary application to the Service until February, 1955.[1] This apparently was because the Attorney General had, in June, 1951, after the return of appellant's application to him, as referred to above, issued a warrant of arrest in deportation proceedings against him, under 8 U.S.C. 1946 ed. § 155, which proceedings did not come to have finality and termination until in November, 1954.

One of the grounds for deportation on which the warrant of arrest was predicated was appellant's Minnesota conviction, supra. Another was a claim that, in having gone to Puerto Rico for a week and in returning therefrom to Miami, Florida, in March, 1951, appellant had been guilty of making an illegal entry into the United States.

The first ground asserted was left without any basis on which to proceed, when the Minnesota State Board of Par-

1. On this preliminary application, an examiner of the Service again made a recommendation against the granting of citizenship to appellant, but the District Court for the Southern District of Florida refused to follow the recommendation and granted appellant's petition for naturalization. The order has, however, not been permitted to become final, presumably because of the institution by the Government of this criminal prosecution and because of the nature of the charges involved therein.

dons, in October, 1951, granted appellant a full and unconditional pardon "for the crime of which he was convicted and from penalties which he thereby incurred by reason of the law and the conviction and sentence aforesaid". The statute then in effect, 8 U.S.C. 1946 ed. § 155 (a), provided that "The provision of this section respecting the deportation of aliens convicted of a crime involving moral turpitude shall not apply to one who has been pardoned * * *". A similar exception is contained in the present statute, 8 U.S.C.A. § 1251(b), enacted in 1952, that "The provisions * * * respecting the deportation of an alien convicted of a crime or crimes [involving moral turpitude] shall not apply (1) in the case of any alien who has subsequent to such conviction been granted a full and unconditional pardon by the President of the United States or by the Governor of any of the several States * * *".

The only ground therefore that remained under the warrant as a basis for proceeding with the deportation attempt was appellant's Puerto Rico trip. To prevent the order issued on this ground from being carried out, appellant brought suit against the Attorney General in the District Court for the District of Columbia, under the provisions of the Administrative Procedure Act, 5 U.S.C.A. § 1009, and the Declaratory Judgments Act, 28 U.S.C.A. § 2201, alleging that the deportation ordered of him on this basis was unlawful, because his return to Florida from Puerto Rico was not an "entry" into the United States within the meaning and intent of the immigration laws. The court so held and enjoined the Attorney General "from apprehending or deporting the plaintiff upon such basis". This judgment became final in November, 1954, and the deportation proceeding thus came to an end at that time.

The criminal prosecution here involved was instituted in the District Court for the District of Minnesota in September, 1956, alleging that the pardon, which the Minnesota State Board had granted appellant in October, 1951, had been obtained by him through misrepresentation, concealment and fraud against the Minnesota Board. The indictment charged that, in having so obtained the pardon, appellant was guilty, under 18 U.S.C. § 1505, of having corruptly endeavored to influence, obstruct and impede (1) the due and proper administration of the law under which the deportation proceeding pending before the Immigration and Naturalization Service, as referred to above, was being had; and (2) also the due and proper administration of the law under which a naturalization proceeding pending before the Service was being had—the pendency of such a proceeding being claimed to exist from the application to file a petition for naturalization which appellant had submitted in February, 1951, as referred to above. Beyond the charge of his having corruptly endeavored to influence, obstruct and impede, each count further alleged, within the language of the statute, that appellant had also in fact corruptly influenced, obstructed and impeded the due and proper administration of the law under which the proceeding involved was being had. This had reference to appellant's use of the pardon in connection with each of the proceedings.

The misrepresentation, concealment and fraud, which it was alleged that appellant had perpetrated on the Minnesota Board, and which it was claimed had induced the granting of the pardon, was a false statement which he had made in his application for pardon regarding other arrests, indictments and convictions against him. The official application form prescribed by the Board and used by appellant called for information to be set out on various specified matters. Among the things to which answer was to be made was the following printed provision: "6. Has never been arrested, indicted or convicted of any offense except ...................". In the blank space provided for answer, appellant inserted this statement: "Liquor law misdemeanor conviction 15 years ago,

and guilty plea to OPA misdemeanor in 1944; charged with minor violations prior but no record of convictions". The Government's evidence established the existence of arrests, indictments and convictions, as set out in In re Taran, supra, 52 F.Supp. 535. It showed also that what appellant had described as "OPA misdemeanor" had consisted in fact of four separate felony offenses.

We turn to a consideration of whether the charges and verdicts before us are entitled to stand.

### I.

The deportation-proceeding conviction.

On the facts in the printed record, there was ample probative basis for the jury to believe and find that appellant had knowingly and intentionally misrepresented his criminal record in his pardon application for purposes of the Board's consideration. Whether his statement could unspeculatively be found on the circumstances to have been an influencing factor in the granting of the pardon, so as to be capable of representing operative fraud, might, however, constitute a closer question. But more crucial than this in respect to the deportation-proceeding charge is the question whether it was at all competent in the situation shown for the court to have allowed the jury to make a collateral exploration into and determination of what basis the pardon had rested on.

The Government was permitted to prove by the testimony of one of the then-members of the Board (its personnel had since successionally changed) that had he known appellant's true record, as revealed to him by the Government in relation to this prosecution, he would not have voted for the pardon. Another member testified, however, that the Board's action had been prompted by its desire not to have the Minnesota conviction used as a basis for deporting appellant—similarly as it had done in a number of other cases where it appeared that the convicted person had since become rehabilitated. The witness stated that the substantial number of communications which had been addressed to the Board by residents of Miami, and which constituted a part of the file, indicated that appellant had, since his removal to Florida in 1945, been a law-abiding person, so that the question of his previous criminal record had not been a matter of any special concern in the pardon situation. The third member testified that he had been new upon the Board at the time, and that he had accordingly been guided primarily by the judgment of the other two in the situation, and more particularly perhaps by that of the witness last referred to.

The record also indicates beyond this that, despite the attempt made by Government counsel, for purposes of this prosecution, to get the State to repudiate the pardon or to take action to have its legal significance annulled, the present Board of Pardons (of which the Attorney General of the State was a member) had refused to do so or to cast any shadow otherwise upon it. Thus, in its relationship to both the deportation proceeding and the present trial, the pardon has, so far as the State of Minnesota is concerned, stood, and been intended to be permitted to stand, as valid, effective and unquestioned official clemency-action on its part.

■ Whether Minnesota law would allow any attack whatever as to a full and unconditional pardon has apparently never come before the Supreme Court of that State for consideration. Assuming, however, that it would be held that such a pardon can be attacked, it seems clear, from the expressions and holdings of that Court in the related field of conditional pardons, that this would be recognized as being capable of being done only as a matter of direct legal issue and judicial determination between the State and the pardon-holder; and that it is accordingly not possible for a third party to make any collateral attack upon or indirect impeachment of it.

Thus, in Guy v. Utecht, 216 Minn. 255, 12 N.W.2d 753, the Court held that a conditional pardon-holder had the right to force the State into such a legal issue

and determination, where it had assumed to deny the pardon continuing effect by taking him back into custody, through resort on his part to a writ of habeas corpus. And in State ex rel. O'Connor v. Wolfer, 53 Minn. 135, 54 N.W. 1065, 1067, 19 L.R.A. 783, the Court in similar vein stated that, where the State chose to take the position that a conditional pardon was without effect, it could institute "proceedings in behalf of the state in the proper court * * * to have the party remanded to prison", in order to get the question presented and adjudicated. Here, since no right to further custody of appellant was involved, the State would presumably, if it had wanted to attack the pardon, have had to bring a suit directly in attempted cancellation of it. Cf. Rathbun v. Baumel, 196 Iowa 1233, 191 N.W. 297, 30 A.L.R. 216. See also 39 Am.Jur., Pardon, Reprieve and Amnesty, § 42.

■ The point of the preceding discussion is that, in the absence of any repudiation and legal attack by the State of Minnesota upon a full and unconditional pardon, which has been issued by its Board of Pardons within the latter's constitutional and statutory powers, the pardon has, in its state aspect, a conclusive nature and consequence. This would mean that in any legal situation, except one involving repudiation or attack by the State itself, the integrity and effect of the pardon would, so far as Minnesota law is concerned, have to be conclusively recognized, so that examination of its elements, incidents, or setting would necessarily be legally incompetent and immaterial for any purpose.

The pardon furthermore would federally have to be accorded the same recognition in any situation involving its state character and significance, under the full faith and credit statute, 28 U.S.C.A. § 1739, third paragraph, providing that authenticated state nonjudicial records "shall have the same full faith and credit in every court and office within the United States and its Territories and Possessions as they have by law or usage in the courts or offices of the State, Territory, or Possession from which they are taken".

More immediate than this, however, as to the present situation, is the fact that the statute under which the deportation proceeding was being had made an absolute acceptance of the state nature and consequence of a pardon in relation to the administration of the deportation laws. As previously noted, 8 U.S.C. 1946 ed. § 155(a) specifically and unqualifiedly provided that "The provision of this section respecting the deportation of aliens convicted of a crime involving moral turpitude shall not apply to one who has been pardoned * * *".

■ Whether Congress could, had it chosen to do so, have allowed a state conviction to be used as a basis for deportation, even though the State had wiped out the conviction by a pardon, there is, of course, no occasion here to consider. It is only important here that Congress has seen fit, for deportation purposes, to give complete recognition to the historic concept and role of pardons, as the element of executive clemency and its legal consequence have come to be rooted in our scheme of justice. That general concept has been typically stated by the Minnesota Supreme Court, as follows: "A pardon * * * completely frees the offender from the control of the state and relieves him of all legal disabilities resulting from his conviction. As a practical matter, it wipes out the conviction itself". State v. Meyer, 228 Minn. 286, 37 N.W.2d 3, 13.

■ It was with such acceptance that Congress made the prescription that the provision in the statute for the deportation of aliens convicted of a crime involving moral turpitude "shall not apply to one who has been pardoned". Such a person is, as to a conviction in that status, left outside the application of the statute. He is expressly excepted from its operation. In other words, the Attorney General is without jurisdiction or power to make deportation, or to engage in any consideration thereof, in relation to such a conviction.

We re-emphasize that the lack of jurisdiction or power to act arises from the existence of the pardon. The authority granted the Attorney General to deport an alien who has been convicted of a crime involving moral turpitude does "not apply to one who has been pardoned". Once a full and unconditional pardon has been issued and is outstanding, a deportation arrest made as to such a crime becomes invalid and the authority to proceed in a deportation-consideration in relation thereto ceases to exist.

■ The result, as has been stated, is made to occur entirely by the statute itself. It is dependent solely upon the fact that such executive action exists, regardless of the considerations or inducements which may have prompted it. What the statute gives recognition and effect to is the fact of the pardon itself, not its reasons or basis. The only administration of the law which is possible to be involved in respect to a pardon situation is the recognizing of and giving effect to the pardon, as the statute requires. Since the pardon is accorded a legal finality and conclusiveness by the statute, its elements and incidents are inherently without any materiality, or competency, or other legal significance, in relation to the administration of the deportation statute.

Thus, so far as deportation is concerned, the elements and incidents of a pardon, granted in the exercise of constitutional and statutory power, are, by 8 U.S.C. 1946 ed. § 155(a), supra, given the effect of legal merger in the pardon itself. Since they are matters which, by § 155, are foreclosed from consideration, significance, or consequence in the administration of the deportation statute, we do not believe that they can be viewed as being capable, on the legislatively commanded result, of legally constituting contamination or endeavor to effect contamination, in the relation of 18 U.S.C. § 1505 to deportation-law administration.

With § 155 according them the status of irrelevance or legal remoteness for deportation-administration purposes, they are left as constituting at most elements and incidents of the pardon, which Congress has chosen to make of no deportation-law concern. That which the deportation law conclusively accepts as being legally without contamination cannot soundly be regarded as involving contamination or endeavor to effect contamination in its administration.

■ In short, since the deportation statute has left the things charged against appellant as not being contaminative of the pardon for purposes of deportation-law administration, we do not believe that it can be said that § 1505 of the Criminal Code was intended to have application to them, on a concept contrary to that of the deportation statute.

We must accordingly hold that appellant's motion for a directed verdict of acquittal on the first count of the indictment was legally required to be sustained.

## II.

### The naturalization-proceeding conviction.

As to naturalization, different than as to deportation, there is no statutory provision which accords to the existence of a pardon such a required legal acceptance as to cloak the basis, processes and incidents thereof with a legal conclusiveness for purposes of the administration of the law in that field, and so to make them legally incompetent or immaterial in relation thereto.

■ In a naturalization proceeding, a pardon is capable of constituting merely an element of relevance and consideration on the question of good moral character, which the statute requires as a qualification for citizenship. The question of good moral character is necessarily one of prime concern and consideration both on the preliminary application submitted to the Naturalization Service and on the naturalization petition itself.

It would therefore seem to us that an improper obtaining of a pardon by an alien for naturalization use could be capable of constituting such an endeavor

to influence, obstruct, or impede the due and proper administration of the naturalization laws as to be able to give rise to a violation of 18 U.S.C. § 1505. In view of the fact, however, that a pardon is possessed of a legal significance and consequences of its own, apart from any other purpose which it may be made to serve, it might be difficult perhaps to establish with sufficient legal certainty the intent and relationship as to a naturalization proceeding, necessary to exist under § 1505, at least if the pardon is not in fact submitted or used therein.

█ Here, since the naturalization proceeding claimed to be involved was pending (if at all) in Florida, the submission or use made by appellant of the pardon after its obtainment could not, of course, constitute an offense in Minnesota, but only in Florida. Hence, only the obtaining of the pardon, as an endeavor made to influence the proceeding pending in Florida, would be capable at all of having its prosecution laid in Minnesota. The submission to the Naturalization Service of an application to file a petition for naturalization cannot in a legal sense, and within the purpose of § 1505, be said to have pendency throughout the entire United States, as the Government argues.

█ The regulations of the Immigration and Naturalization Service make specific prescription as to the office where an alien is required to submit his application to the Service, related to the place where his petition for naturalization has to be filed. 8 CFR 1949 ed. § 370.1, § 60.30(a). They further provide that the preliminary investigations to be made by the Service "shall be based upon the Form N-400 (application) submitted by the applicant". 8 CFR 1949 ed. (1951 Cum.Pock.Supp.) § 370.80.

Thus, within the organizational scheme and set-up of the Naturalization Service, and in relation to the objectivity entitled to be attributed to the term "proceeding pending" in 18 U.S.C. § 1505, the naturalization proceeding here claimed to be pending would have had its pendency in the Southern District of Florida, where appellant submitted his preliminary application, and where his naturalization petition was required to be filed.

For purposes of the result which we believe is here compelled, however, it is not necessary to deal with any further considerations as to appellant's conviction on Count II, except one matter. That is the Government's attempt to relate the charge and offense of Count II to the fact that appellant had submitted a preliminary application to file a petition for naturalization to the Miami, Florida, office of the Naturalization Service in February, 1951. It was on this basis that the indictment alleged that a naturalization proceeding was pending before the Service in April, 1951, when appellant made application to the Minnesota State Board for a pardon, as well as in October, 1951, when the pardon was obtained by him.

As we have pointed out above, however, the Service had returned the application to appellant on February 28, 1951, with the direction, "It is requested that you do not submit the application until all required documents can accompany it". Also, as noted, appellant did not again undertake to submit an application to the Service until February, 1955. Thus, at the time of the charged offense, the Immigration and Naturalization Service had no application in its hands; it was not, within the regulations, in a position to make an investigation "based upon the Form N-400 submitted by the applicant"; it indicated by its letter to appellant that it regarded the application as not having been entitled to be submitted and that it was not going to give any consideration to it but was making return of it to him; and it engaged in no correspondence or taking of any action in relation to it, suggestive that it recognized the application as having any possible pendency before it, or as imposing any statutory or regulatory responsibility toward appellant in respect thereto. Appellant similarly so treated

the situation, as evidenced by his submission of a new application in February, 1955, after the deportation proceedings had come to an end. And that application was dealt with by the Service as a new and independent matter, having no relationship to what had been done in 1951.

On these facts, the holding is legally compelled, it seems to us, that there had been what amounted to a rejection or withdrawal of the 1951 application, so that there was no proceeding in naturalization pending during appellant's pardon efforts, or until February, 1955. To be pending is to be subject to and awaiting some form of disposing action. 70 C.J.S. Pendency, p. 420.

Hence, whatever appellant may improperly have done in making application for a pardon and in obtaining it, this could not be held to be an endeavor to influence, obstruct, or impede the due and proper administration of the law in relation to any proceeding pending before the Naturalization Service, as an offense under 18 U.S.C. § 1505. Morally, any such improper endeavor, made for the purpose of serving a purpose in an intended subsequent proceeding, might be as wrong as one made with intended relationship to a pending proceeding, but § 1505 makes only the latter, and not the former, a criminal offense.

No criminal offense would be capable of arising as to the former, until a proceeding had come to pend and there was an endeavor to influence, obstruct or impede it by means of what had previously been done. But there is not charged here, nor could there exist in Minnesota, any crime in relation to what appellant may have improperly done in making use of his pardon in the naturalization proceeding which came to pend in Florida in 1955. And, of course, the questions whether his pardon-obtaining actions were in fact improper, and whether he made an improper use of the pardon, as related to that proceeding, are matters, not for us, but for another court.

### III.

The result reached leaves all the other contentions of the parties without need for any consideration. The judgment of conviction on each of the counts of the indictment is reversed, and the cause is remanded with directions to enter a judgment of acquittal in favor of appellant as to each of the offenses charged in the indictment, on the basis of the conclusions set out in the opinion.

Reversed and remanded with directions.